Filing # 67926664 E-Filed 02/13/2018 05:52:18 PM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR OSCEOLA COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:

SOUTHSTAR CAPITAL GROUP, I,
LLC, a Florida limited liability company;
COTTINGTON ROAD TIC, LLC, a Delaware
limited liability company; and DURBAN ROAD
TIC, LLC, a Delaware limited liability company,

      Plaintiffs,

v.

1662 MULTIFAMILY LLC, a Delaware limited
liability company; HINES 1662 MULTIFAMILY, LLC,
a Delaware limited liability company; HINES
INVESTMENT MANAGEMENT HOLDINGS LIMITED
PARTNERSHIP, a Texas limited partnership;
HIMH GP, LLC, a Delaware limited liability company;
HINES REAL ESTATE HOLDINGS LIMITED
PARTNERSHIP, a Texas limited partnership; HINES
INTEREST LIMITED PARTNERSHIP, a Texas
Limited Partnership; JCH INVESTMENTS, INC.,
a Texas corporation; and URBAN OAKS BUILDERS, LLC,
a Delaware limited liability company,

      Defendants.

_____/

## COMPLAINT FOR DAMAGES

     Plaintiffs, Southstar Capital Group, I, LLC ("**Southstar**"), a Florida limited liability

company, Cottington Road TIC, LLC ("**Cottington**"), a Delaware limited liability company, and

Durban Road TIC, LLC ("**Durban Road**"), a Delaware limited liability company (collectively,

"**Plaintiffs**"), hereby sue Defendants, 1662 Multifamily LLC ("**1662 Multifamily**"), a Delaware

limited liability company, Hines 1662 Multifamily, LLC ("**Hines 1662**"), a Delaware limited

liability company, Hines Investment Management Holdings Limited Partnership ("**Hines**

Investment"), a Texas limited partnership, HIMH GP, LLC ("**HIMH**"), a Delaware limited liability company, Hines Real Estate Holdings Limited Partnership ("**Hines Real Estate**"), a Texas limited partnership, JCH Investments, Inc., ("**JCH**"), a Texas corporation, and Urban Oaks Builders, LLC ("**UOB**"), a Delaware limited liability company and Hines Interests Limited Partnership, a Texas Limited Partnership ("**Hines Interests LP**"), (collectively referred to as the "**Hines Defendants**"). Plaintiffs allege as follows:

## I.    PARTIES, VENUE, AND JURISDICTION

1.      This is an action for damages in excess of $15,000.00 against the Defendants, exclusive of interest, attorneys' fees and costs, relating to the construction, negotiation, and sale of real property and improvements located at 1662 Celebration Blvd., Celebration, Florida 34747, known as "Aviva at Celebration" (hereinafter the "**Property**").

2.      The Hines Defendants are Affiliates of each other. The term "**Affiliates**" and all other capitalized terms used herein will have the same meaning as defined in the Agreement of Sale and Purchase between Plaintiff Southstar and Defendant 1662 Multifamily (the "**Agreement**" attached hereto as **Exhibit 1**).

3.      Jurisdiction and venue are proper in Osceola County, Florida, insofar as (a) the Property is located in Osceola County, Florida; (b) Section 17.8 of the Agreement provides that "any action in connection with this Agreement shall be brought and maintained in the state or federal courts that are seated in the city and county in which the property is located, and the parties hereby consent and agree to the jurisdiction of such courts"; (c) as to Defendants 1662 Multifamily and UOB, both Defendants are registered to do business in Florida, and the causes of action against them accrued in Osceola County; and (d) as to the other Hines Defendants, they are subject to Fla. Stat. § 48.193(1)(a) (Florida's Long Arm Statute) because (i) the other Hines

2

Defendants (along with UOB) are alter egos of Defendant 1662 Multifamily and, thus, they along with 1662 Multifamily breached the Agreement, which was negotiated and entered into within the State of Florida; and (ii) the other Hines Defendants, through 1662 Multifamily, a sham and shell entity, solicited, accepted and transacted business within the State of Florida by operating the Property in Osceola County, Florida.

4. Plaintiff, Southstar, is a Florida limited liability company with its principal place of business in Palm Beach County, Florida.

5. Plaintiff, Cottington, is a Delaware limited liability company that at all times material was authorized to and conducting business in Osceola County, Florida.

6. Plaintiff, Durban Road, is a Delaware limited liability company that at all times material was authorized to and doing business in Osceola County, Florida.

7. Defendant, UOB, is a Delaware limited liability company authorized to and conducting business in Osceola County and served as the licensed general contractor for work on the Property pursuant to Florida Statute Section 489.119.

8. Defendant, 1662 Multifamily, is a Delaware limited liability company registered and authorized to do business in the State of Florida.

9. Defendant, Hines 1662, is a Delaware limited liability company and is the managing member of 1662 Multifamily.

10. Defendant, Hines Investment, is a Texas limited partnership and the managing member of Hines 1662.

11. Defendant, HIMH, is a Delaware limited liability company and is the general partner of Hines Investment.

12. Defendant, Hines Real Estate, is a Texas limited partnership and is the sole

3

member of HIMH.

13.     Defendant JCH is a Texas corporation and is the general partner of Hines Real Estate.

14.     Defendant, Hines Interests LP, is a Texas Limited Partnership and parent of JCH.

## II.     GENERAL ALLEGATIONS COMMON TO ALL COUNTS

15.     On or about July 1, 2016, South Star, as manager and agent for Cottington and Durban Road, and Defendant, 1662 Multifamily, entered into the Agreement in which Plaintiffs agreed to purchase and Defendant, 1662 Multifamily, agreed to sell the Property for $67,000,000.

16.     Plaintiffs, Cottington and Durban Road, are the record titleholders of the Property, as a result of the sale.

17.     Pursuant to the Agreement, Defendant, 1662 Multifamily, made numerous material representations that Plaintiff relied upon in executing the Agreement and purchasing the Property.     These material representations are set forth in ARTICLE VIII – REPRESENTATIONS AND WARRANTIES, and include the following:

> (h) <u>No Violations.</u> To Seller's Knowledge, Seller has not received prior to the Effective Date any written notification from any Authority (i) that the Real Property and Improvements is in violation of any applicable fire, health, building, use occupancy or zoning laws or (ii) that any work is required to be done to the Real Property and Improvements where such work remains outstanding, and, if unaddressed would have a material adverse effect on the Property or use of the Property as currently operated.

> (I) <u>Permits.</u> To Seller's Knowledge, there are no open permits, nor bonding requirements of Seller, relating to the Property.   To Seller's Knowledge, Seller, or Seller's property management agent, has obtained all necessary licenses to operate the Property as presently operated.

18.     In addition to the foregoing representations, Defendant, 1662 Multifamily, also

undertook an express contractual duty to refrain from intentionally withholding, as well as an actionable tort duty to not fraudulently fail to disclose to Plaintiff, any physical characteristic of or existing condition on the Property then known to Defendant 1662 Multifamily, including but not limited to structural conditions of the buildings on the Property.

19.     Specifically, Section 5.6(b) of the Agreement states as follows:

>       (b)     Purchaser's Waiver of Objections.  Purchaser acknowledges that it has inspected the Property, observed its physical characteristics and existing conditions and had the opportunity to conduct such investigations and studies on and of said Property and adjacent areas as it deems necessary, and subject only to Seller's responsibility for any breach of the warranty and representation contained in Section 8.1(i) of this Agreement (as limited by Section 16.1 of this Agreement), Purchaser hereby waives any and all objections to or complaints (including but not limited to actions based on federal, state or common law and any private right of action under CERCLA, RCRA or any other state and federal law to which the Property is or may be subject) against Seller, its Affiliates, or their respective officers, directors, partners, members, owners, employees or agents regarding physical characteristics and existing conditions, including without limitation structural and geologic conditions, subsurface soil and water conditions and solid and hazardous waste and Hazardous Substances on, under, adjacent to or otherwise affecting the Property or related to prior uses of the Property.  **The Purchaser's waiver as set forth in this Section 5.6(b) shall not apply in the event that Seller either intentionally withheld or fraudulently failed to disclose to Purchaser any physical characteristic of or existing condition on the Property as described above that was then known to Seller.**

(Emphasis added.)

20.     Section 1.1 Definitions "To Seller's Knowledge" is defined as the "present actual (as opposed to constructive or imputed) knowledge of Jon Wood."

21.     Jon Wood was and is an employee of Hines Interests LP.

22.     Jon Wood was intimately involved in the development and construction of the Property and was aware of the non-compliant and deficient construction practices being implemented by UOB. Jon Wood was regularly present at the construction site and attended numerous meetings with UOB.  In doing so, he obtained actual knowledge of certain Hidden Defects, as defined below.

23.     Subsequent to the purchase of the Property, Plaintiffs discovered that Defendant 1662 Multifamily, a sham entity and alter ego of the other Hines Defendants, intentionally withheld, actively concealed, misrepresented, and/or fraudulently failed to disclose physical characteristics and existing conditions, as well as other latent defective conditions, including but not limited to extensive non-compliance with the as-built record drawings, and extensive violations of the of the Florida Building Code, as well as other latent defective conditions, which could not be observed or determined by the Plaintiffs through the exercise of ordinary reasonable diligence (collectively, the "**Hidden Defects**") that were known to the Hines Defendants.

24.     Specifically, as evidenced by field reports, extensive photographs and notes prepared and maintained during construction of the Property and the as-built drawings indicating that the construction conformed to the plans and specifications commissioned by the Hines Defendants, as compared to the actual construction reviewed after destructive testing, the Hines Defendants had actual and/or constructive knowledge of the Hidden Defects.

25.     The Hidden Defects could only be observed or determined to exist by the Plaintiffs after the manifestation of certain Hidden Defects in February 2017 through emerging vertical deflection of cantilevered balconies, as well as cracking of the walls, breezeways and walking surfaces of the buildings. These emerging manifestations gave the first indication of construction defects and resulting damage which led to the necessity to perform extraordinary examinations to expose the Hidden Defects.

26.     The Hidden Defects that existed but which had not manifested in any way at the time Plaintiffs purchased the Property, include but are not limited to:

a.     Defective construction of the structural elements that was intentionally and actively concealed and not disclosed in the As-built Record Drawings.

6

      b.     Defective construction that constitutes Building Code Violations.

      c.     Defective construction of the shear walls as required by the original plans and specification for construction of the Property and Building Code, including, but not limited to, improper spacing of framing elements, improper fasteners and fastener spacing, failure to include support trusses and failure to properly install required strapping, all of which would have been readily observable by the Hines Defendants before the drywall was installed.

      d.     Tension Rods that were not certified as to proper tension, and failed to meet the requirement for anchorage in foundation elements.

      e.     Improper construction of structural members, including but not limited to, columns, window jambs, door frames and cantilevering for the balconies.

      f.     Improper installation of structural Zip Board sheathing as part of the building envelope, including over penetration of the fasteners and improper installation of required board tape, resulting in deterioration of the Zip Board from water intrusion.

      g.     Improper water proofing and flashing at balconies, windows and roofs, including, but not limited to the failure to install required weep screeds to allow water to escape the drainage plane system, failure to properly install flashing tape at balcony, roof and windows, and .

      27.     These Hidden Defects caused the following substantial, material and harmful resulting damage and impacts to the Property:

      a.     The Property was condemned by the Osceola County Building Department and a Notice of Evacuation was posted on all six buildings by the Osceola County Building Official, pursuant to an Order dated August 14, 2017.

      b.     Cantilever balconies failed and were rendered unsafe for use.

      c.     The above stated defects resulted in damage to other work on the Property, including, but not limited to:

     i.  Water intrusion damaging other work elements of the buildings and work of other subcontractors, including, but not limited to, framing and interior finishes(i.e. drywall, wood molding, cabinetry, carpeting, flooring, and electrical components) and resulting in mold growth;

     ii.  The need for extensive replacement of structural Zip Board sheathing due to deterioration from water damage;

     iii.  Costs associated with removing drywall and stucco cladding to investigate and repair damage to various elements of the construction and defective work identified during Plaintiffs' investigation, as well as subsequent replacement of the drywall and stucco cladding;

     iv.  Costs associated with returning affected units to market ready condition and repair affected common areas;

     v.  Loss of rental income due to the defective construction and resultant evacuation order, which remains ongoing;

     vi.  Costs associated with various professionals engaged to perform a full evaluation of defects and damage and participate in the development of repair protocols;

     vii.  Stigma damages resulting from the defective construction and resultant evacuation order.

28.    The Hines Defendants' intentional withholding and fraudulent failure to disclose the material information regarding Hidden Defects outlined in the preceding paragraphs was

intended by the Hines Defendants to induce Plaintiffs to purchase the Property without the benefit of the Hines Defendants' superior knowledge of the Hidden Defects.

29.     Plaintiffs would not have purchased the Property from Defendant 1662 Multifamily if Defendant 1662 Multifamily or the other Hines Defendants disclosed the Hidden Defects to Plaintiff and/or would have not agreed to pay but a small fraction of $67,000,000.00.

30.     At all relevant times, Defendant 1662 Multifamily was dominated and controlled by the other Hines Defendants. The Hines Defendants are alter egos of each other. Plaintiffs seek to impose alter ego liability against Defendant 1662 Multifamily and the other Hines Defendants to hold all Defendants responsible for the injuries caused to Plaintiffs by the Hines Defendants' scheme to improperly withhold their knowledge of the Hidden Defects, fraudulently induce the Plaintiffs to purchase the property and use 1662 Multifamily as a protective shield while carrying out the scheme.

31.     The Hines Defendants are inextricably intertwined as parts of the same corporate family, all of which are Affiliates under the control and management of Hines Interests LP and JCH. As the ultimate parent companies, Hines Interest LP and JCH conduct all of their operations through the Affiliates that are the other Hines Defendants. In this instance, a scheme was carried out by the Hines Defendants which was premised upon the substantial sharing of the Hines Defendants' agents' knowledge across and among all the Hines Defendants so that two of the entities (i.e., Defendants 1662 Multifamily and UOB) could appear to carry out their duties without actually having their own resources to do so, and without actually fulfilling those duties. As detailed below, alter ego liability is appropriate because (i) there exists such a unity of interest and ownership that the separate identities of the Hines Defendants were effectively disregarded; and (ii) that disregard of separate identities resulted in substantial fraud and

injustice to Plaintiffs.

32. Prime examples of the Hines Defendants' agents' knowledge of non-compliance with legal requirements include but are not limited to the non-performance of the customary activities of a developer to assure that its licensed general contractor met all legal requirements, including, but not limited to, licensed general contractors' customary and legally defined duties to supervise the Work to assure compliance with the Florida Building Code and all requirements of the permitted construction documents. The Hines scheme allowed severely defective construction work that violated the requirements of the Building Code, to be covered up and hidden from view and inspection, followed by the submission of knowingly inaccurate and misleading As-Built Record Drawings to the Osceola County Building Department. The Hines Defendants knowingly failed to take necessary corrective actions to remedy the defects. The final step in the Hines Scheme was to sell the Property on an As-Is basis. However, the Hines scheme is barred by Section 5.6(b) of the Agreement, which expressly imposes liability for intentional or fraudulent non-disclosure of material facts, such as Hidden Defects.

33. All conditions precedent to the filing of this action have been performed, have occurred, have been excused and/or have been waived.

34. As a result of the matters hereinafter described, the Plaintiffs were required to retain the services of Weinberg Wheeler Hudgins Gunn & Dial, LLC and Podhurst Orseck, P.A. to represent them in this cause and have bound and obligated themselves to pay such firms a reasonable fee for their services.

35. Pursuant to Section 17.2 of the Purchase and Sale Agreement, Plaintiffs, as the prevailing party in this action are entitled to recover all attorneys' fees and costs expended in bringing this action, and Plaintiffs hereby demand same.

### III.   APPLICABLE FLORIDA BUILDING CODE

36.     Section 553.73, Florida Statutes (2001), prescribes the Florida Building Code as one of the State of Florida's minimum codes, which applies to the "design, construction, erection, alteration, modification, repair, and demolition of public and private buildings, structures, and facilities." The Florida Building Code has been adopted in Osceola County, Florida, and thus applies to and governs construction of the Property.

37.     Section 553.84, Florida Statutes (2001), provides:

> Notwithstanding any other remedies available, any person or party, in an individual capacity or on behalf of a class of persons or parties, damaged as a result of a violation of this part or the state minimum building codes, has a cause of action in any court of competent jurisdiction against the person or party who committed the violation.

### IV.   CAUSES OF ACTION

### COUNT I – PIERCING THE CORPORATE VEIL/ALTER EGO
#### (*Hines Defendants*)

38.     Plaintiffs reallege paragraphs 1-37 above as though fully set forth herein.

39.     The corporate form should be disregarded as between each of the Hines Defendants for the following reasons:

a.      Upon information and belief, the Hines Defendants operated as a single economic entity that resulted in an overall element of injustice or unfairness to Plaintiffs in that Defendant 1662 Multifamily, as the Seller of the Property to Plaintiffs, has no assets upon which to compensate Plaintiffs for the damages that Defendant 1662 Multifamily and the other Hines Defendants inflicted upon Plaintiffs;

b.      Upon information and belief, Defendant 1662 Multifamily was undercapitalized;

c.      Upon information and belief, and as further evidence of the unity of interests, the policy providing insurance for work performed on the property was purchased by, paid for and written in the name of Hines Interest LP.

d.      Upon information and belief, Defendant 1662 Multifamily and the other Hines Defendants failed to observe corporate formalities;

e.      Upon information and belief, Defendant 1662 Multifamily paid dividends or sale proceeds to the Hines Defendants, such that Defendant 1662 Multifamily was rendered undercapitalized or insolvent;

f.      Upon information and belief, the Hines Defendants siphoned funds from Defendant 1662 Multifamily;

g.      Upon information and belief, there was a material absence of separate corporate records among the Hines Defendants; and

h.      Upon information and belief, Defendant 1662 Multifamily and UOB were facades for the operations of the other Hines Defendants.

40.      Specifically, as set forth herein, a scheme was carried out by the Hines Defendants, which was premised upon the substantial sharing of the Hines Defendants' agents' knowledge across and among all the Hines Defendants so that two of the entities (i.e., Defendants 1662 Multifamily and UOB) could appear to carry out their duties without actually having the resources to do so, and without actually fulfilling those duties.

WHEREFORE, Defendants 1662 Multifamily and the other Hines Defendants should be treated as one entity for all purposes, including without limitation being held jointly and severally liable for the damages to Plaintiffs.

## COUNT II – FRAUDULENT NON-DISCLOSURE/FRAUDULENT INDUCEMENT
### *(Hines Defendants)*

12

41.     Plaintiffs reallege paragraphs 1-37 above as though fully set forth herein.

42.     Defendant 1662 Multifamily and the other Hines Defendants, as alter egos of Defendant 1662 Multifamily, had an actionable tort duty to not fraudulently fail to disclose to Plaintiffs any physical characteristic of or existing condition on the Property then known by the Hines Defendants, including but not limited to structural conditions of the buildings on the Property.

43.     The Hines Defendants breached the aforementioned duty by intentionally withholding or fraudulently failing to disclose to Plaintiffs the Hidden Defects known to the Hines Defendants prior to Plaintiffs' purchase of the Property.

44.     Plaintiffs could not have discovered the Hidden Defects prior to their purchase of the Property. The Hidden Defects could only be observed or determined to exist by the Plaintiffs after the manifestation of the Hidden Defects in February 2017 through vertical deflection and cracking of the walls and walking surfaces of the buildings, which gave the first indication that it was necessary to perform extraordinary examinations initially requiring removal of layers of finish materials from the floor to ceiling of the residential units and progressing to include exterior finish materials to expose the Hidden Defects.

45.     The Hidden Defects caused substantial, material and harmful impacts to the Property.

46.     The Hines Defendants' intentional withholding and fraudulent failure to disclose the material information regarding the Hidden Defects was intended by the Hines Defendants to induce Plaintiffs to purchase the Property without the benefit of the Hines Defendants' superior knowledge of the Hidden Defects.

47.     Plaintiffs justifiably relied to their detriment on the Hines Defendants'

13

concealment and non-disclosure of the Hidden Defects. If Plaintiffs had known of the Hidden Defects, Plaintiffs would not have purchased the Property and/or would not have agreed to pay but a small fraction of the $67,000,000.

48.     As a direct and proximate cause of the Hines Defendants' scheme to improperly withhold their knowledge of the Hidden Defects from Plaintiffs, Plaintiffs have suffered damages, which they are entitled to recover from the Hines Defendants.

WHEREFORE, Plaintiffs demand judgment against the Hines Defendants for compensatory damages in an amount in excess of $15,000.00 to be determined by the Court, plus attorneys' fees, interest and costs. In the alternative, Plaintiffs demand rescission of the Agreement, plus attorneys' fees, interest and costs.

## COUNT III – BREACH OF CONTRACT – INTENTIONAL WITHHOLDING OF MATERIAL INFORMATION
### *(Hines Defendants)*

49.     Plaintiffs reallege paragraphs 1-37 above as though fully set forth herein.

50.     The Agreement is a valid and enforceable contract between Plaintiff Southstar and Defendant 1662 Multifamily.

51.     The other Hines Defendants are a party to the Agreement as alter egos of Defendant 1662 Multifamily.

52.     Plaintiffs fully performed all of their obligations under the Agreement.

53.     The Hines Defendants possessed an express contractual duty to refrain from intentionally withholding material information regarding any physical characteristic of or existing condition on the Property then known by the Hines Defendants, including but not limited to structural conditions of the buildings on the Property.

54.     Specifically, Section 5.6(b) of the Agreement imposed upon the Hines Defendants

14

the contractual duty to not intentionally withhold any physical characteristic of or existing condition on the Property that was known to the Hines Defendants.

55.    The Hines Defendants breached the aforementioned duty to disclose known facts relating to the Property by intentionally withholding disclosure of the Hidden Defects prior to Plaintiffs' purchase of the Property.

56.    Plaintiffs could not have discovered the Hidden Defects prior to their purchase of the Property. The Hidden Defects could only be observed or determined to exist by the Plaintiffs after the manifestation of the Hidden Defects in February 2017 through vertical deflection and cracking of the walls and walking surfaces of the buildings, which gave the first indication that it was necessary to perform extraordinary examinations requiring removal of lawyers of finish materials from the floor to ceiling of the residential units to expose the Hidden Defects.

57.    The Hidden Defects had substantial, material and harmful impacts to the Property, and caused resulting damage to the Property as set forth in paragraph 27 above.

58.    If Plaintiffs had known of the Hidden Defects, Plaintiffs would not have purchased the Property and/or would not have agreed to pay but a small fraction of the $67,000,000.00 purchase price.

59.    As a direct and proximate cause of the Hines Defendants' breach of the Agreement, Plaintiffs have suffered damages, which they are entitled to recover.

WHEREFORE, Plaintiffs demand judgment against the Hines Defendants for compensatory damages in an amount in excess of $15,000.00 to be determined by the Court, plus attorneys' fees, interest and costs.

### COUNT IV – STATUTORY VIOLATION OF FLORIDA STATUTES 553.84
### *(Hines Defendants)*

60.    Plaintiffs reallege paragraphs 1-37 above as though fully set forth herein.

61.     Section 553.84, Florida Statutes (2001), expressly creates a statutory cause of action on behalf of any person damaged as a result of a violation of the Florida Building Codes Act (Sections 553.70, *et seq.*, Florida Statutes) against the party or parties committing the violations.

62.     Defendant UOB was under a statutory duty to the Plaintiffs, pursuant to Florida Statutes, Chapter 553, Part VII ("**Building Code**"), to properly construct and deliver, in compliance with all applicable local, state, and national building codes and regulations, the Property, as well as all property transferred with or appurtenant to the Property, all improvements on the Property, all structural components of the buildings on the Property, all other improvements, components, elements and systems for use on the Property, and all mechanical, structural, electrical, plumbing elements serving the Property.

63.     Defendant UOB in constructing and delivering the Property to the owner and developer failed to comply with and knew or should have known of non-compliance with applicable local, state, and national building codes and regulations, including but not limited to the Building Code.

64.     Specifically, the Hidden Defects that existed as a result of UOB's improper construction on the Property, which UOB knew or should have known existed, but which had not visibly emerged at the time Plaintiffs purchased the Property, include but are not limited to:

      a.     Defective construction of the structural elements that was intentionally and actively concealed and not disclosed in the As-built Record Drawings.

      b.     Defective construction that constitutes Building Code Violations.

      c.     Defective construction of the non-continuous shear walls as required by the original plans and specification for construction of the Property and Building Code.

d.      Tension Rods that were not certified as to proper tension, and failed to meet the requirement for anchorage in foundation elements.

e.      Improper construction of structural members, including but not limited to, columns, window jambs, door frames and cantilevering for the balconies.

f.      Improper installation of structural Zip Board as part of the building envelope, including over penetration of the fasteners and improper installation of required board tape.

g.      Improper water proofing and flashing at balconies, windows and roofs. Defendants, UOB and Hines Interests LP, knew or should have known that its construction was in violation of the applicable building code.

65.     Due to Defendant UOB's failure to comply with the Florida Building Codes Act, about which UOB knew or should have known, Plaintiffs have proximately suffered damages and will continue to suffer damages, including but not limited to the cost to correct Florida Building Code violations, the cost to repair resulting damage to the Property as set forth in paragraph 27 above and consequences of the manifestation of the discovery of those violations.

66.     The other Hines Defendants are alter egos of UOB and are, thus, liable to Plaintiffs for UOB's violations of Section 553.84, Florida Statutes.

WHEREFORE, Plaintiffs demand judgment against UOB and the other Hines Defendants for damages in an amount in excess of $15,000.00 to be determined by the Court, plus attorneys' fees, interest and costs.

## COUNT V - NEGLIGENCE
### (Hines Defendants)

67.     Plaintiffs reallege paragraphs 1-37 above as though fully set forth herein.

68.     Defendant UOB was the general contractor for Defendant 1662 Multifamily and

the other Hines Defendants for the construction of all improvements on the Property for construction of all buildings, amenities and appurtenances, and was the building permit holder on the Property. Defendant UOB was responsible for supervising and implementing the proper means and methods of construction for the Property, including (a) assuring the work was properly performed by its subcontractors, and (b) assuring proper materials were supplied by the subcontractors for construction, repairs, and improvements on the Property.

69.     As the general contractor, Defendant UOB owed a duty to Plaintiffs to: (a) ensure that construction was performed in accordance with the filed and approved plans and specifications; (b) construct and provide materials free of defects for the construction on the Property in compliance and conformance with applicable local and state building codes; and/or (c) to perform its contractual and statutory duties, including but not limited to on-site supervision and management services, to assure the proper construction and installation of the materials and to do so with reasonable care in accordance with standards of good workmanship and good construction practice, in accordance with applicable and accepted industry standards, and in a manner which assured that the construction and materials were installed without defects and deficiencies in accordance with applicable building codes and in compliance with the approved plans and specifications.

70.     Defendant UOB breached its duty to Plaintiffs by constructing and/or providing defective materials in violation of applicable building codes and of good construction practice and industry standards, and/or failed to perform their work using reasonable care to assure the construction and materials were properly installed in conformance with applicable building codes and in compliance with the approved plans and specifications.

71.     Specifically, the Hidden Defects that existed as a result of UOB's negligent

construction on the Property but which had not manifested in any way at the time Plaintiffs purchased the Property, include but are not limited to:

a.      Structural Conditions that were concealed and not disclosed in the As-built Record Drawings.

b.      Building Code Violations.

c.      Non-continuous Shear walls as required by the original plans and specification for construction of the Property and Building Code.

d.      Tension Rods that were not certified as to proper tension, and failed to meet the requirement for anchorage in foundation elements.

e.      Improper construction of structural members, including but not limited to, columns, window jams, door frames and cantilevering for the balconies.

f.      Improper installation of structural Zip Board as part of the building envelope, including over penetration of the fasteners and improper installation of required board tape.

g.      Improper waterproofing and flashing at balconies, windows and roofs. As a direct and proximate result of Defendant UOB's negligence and failure to exercise a reasonable degree of skill and care in constructing, administering, and/or approving the work performed and the materials supplied in the construction of the Property, as well as its failure to exercise a reasonable degree of skill and care in assuring that the work performed and the materials supplied were in accordance with the plans, specifications, the contracts, and the applicable Florida Building Code, Plaintiffs suffered damages and will continue to suffer damages, including but not limited to the costs to repair and replace the deficiencies described herein, as well as the cost to repair damage to the Property as set forth in paragraph 27 above.

72.     The other Hines Defendants are alter egos of UOB and are, thus, liable to Plaintiffs for UOB's negligence.

73.     As a direct and proximate result of Defendant UOB's breach of its duty to exercise reasonable care, Plaintiffs have proximately suffered and will continue to suffer damages in excess $15,000.00 for investigation, evaluation, repair and replacement of defective and damaged work, loss of use of the property including lost rents, stigma damages resulting from the condemnation and evacuation of the Property by order of the Osceola County Building Department, in addition to the costs and expenses associated with attorneys' fees, costs, for which Defendant UOB is liable.

WHEREFORE, Plaintiffs demand judgment against UOB and the other Hines Defendants for damages in an amount in excess of $15,000.00 to be determined by the Court, plus attorneys' fees, interest and costs.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all counts so triable.

Dated: February 13, 2018

Respectfully Submitted,

s/     *Michael A. Hornreich*
Michael A. Hornreich (FBN 379972)
Steven D. Gonzalez, (FBN 658448)
WEINBERG WHEELER HUDGINS, GUNN & DIAL, LLC
255 South Orange Avenue, Suite 1260
Orlando, FL 32801
(P) 407.734.7000
(F) 407.930.9780
Email: mhornreich@wwhgd.com
Email: sgonzalez@wwhgd.com
*Counsel for Plaintiffs*

20

and

s/      *Ramon A. Rasco*
Ramon A. Rasco (FBN 617334)
**PODHURST ORSECK, P.A.**
1 SE 3rd Avenue, Suite 2700
Miami, FL 33131
(P) 305.358.2800
(F) 305.358.2382
Email: rrasco@podhurst.com
*Counsel for Plaintiffs*