Filing # 72385490 E-Filed 05/18/2018 04:32:57 PM

## IN THE NINTH JUDICIAL CIRCUIT COURT
## IN AND FOR OSCEOLA COUNTY, FLORIDA

SOUTHSTAR CAPITAL GROUP, I, LLC,
COTTINGTON ROAD TIC, LLC, and
DURBAN ROAD TIC, LLC,

      Plaintiffs,

vs.                                       CASE NO.  2018-CA-415-OC

1662 MULTIFAMILY LLC, HINES 1662
MULTIFAMILY, LLC, HINES
INVESTMENT MANAGEMENT
HOLDINGS LIMITED PARTNERSHIP,
HIMH GP, LLC, HINES INTERESTS
LIMITED PARTNERSHIP, JCH
INVESTMENTS, INC, and URBAN
OAKS BUILDERS LLC

      Defendants.

_____/

## DEFENDANT URBAN OAKS BUILDERS LLC'S MOTION TO DISMISS

      Defendant Urban Oaks Builders LLC ("UOB") files this Motion to Dismiss the claims brought by Plaintiffs in Counts I–III of their Complaint for Damages under Rule 1.140(b)(6) of the Florida Rules of Civil Procedure.

### I.     INTRODUCTION

      This is a construction defect case.  The underlying allegations asserted by Plaintiffs Southstar Capital Group, I, LLC ("Southstar"), Cottington Road TIC, LLC and Durban Road TIC, LLC (collectively "Plaintiffs") all concern allegedly defective construction at an apartment project UOB built as the general contractor and completed in 2016.  UOB denies and disputes many of Plaintiffs' allegations and is filing an Answer and Affirmative Defenses simultaneously with this motion.

Leaving aside for the moment the substantive validity of the Plaintiffs' claims, it is clear that the only appropriate party that the Plaintiffs can sue for any allegedly defective construction is UOB.  None of the other defendants that Plaintiffs have included in this lawsuit had any role in the construction of the property at issue.

But notwithstanding this fact, Plaintiffs have sued 1662 Multifamily, LLC ("1662 Multifamily") the entity with whom UOB contracted to build the building in question and who then sold it to Southstar, and have also sued Hines 1662 Multifamily LLC, Hines Investment Management Holdings Limited Partnership, HIMH GP LLC, Hines Real Estate Holdings Limited Partnership, Hines Interests Limited Partnership, and JCH Investments, Inc. (together with 1662 Multifamily the "Other Defendants") in a baseless effort to hold UOB and the Other Defendants collectively liable under theories of fraud and misrepresentation.  1662 Multifamily and the Other Defendants have filed a motion to dismiss Plaintiffs' claims against them because they fail to state a viable claim under applicable law.  UOB hereby moves to dismiss the claims against it in Counts I–III for the same reason.

In short, Plaintiffs are seeking to hold UOB liable for misrepresentations based on a contract it did not sign and representations it did not make, and predicated on the conclusory assertion that UOB, 1662 Multifamily and the Other Defendants are all "affiliates" and therefore are collectively responsible—to the Plaintiffs.  Plaintiffs essentially seek to have the court disregard the corporate separateness of UOB and the Other Defendants in this action.  But courts are reluctant to pierce the corporate veil and disregard the corporate form and with good reason.  This Court should not do so here.

Under the applicable legal standards. in order to pierce the corporate veils that separate UOB from the Other Defendants. Plaintiffs must allege facts establishing the complete

domination and control by UOB over 1662 Multifamily so that it functions as a "mere instrumentality" of UOB, as well as allege facts that establish conduct tantamount to fraud in the formation or use of 1662 Multifamily by UOB. Plaintiffs have alleged and cannot prove any of this and their "claim" for piercing the corporate veil must be dismissed, along with the breach of contract and fraudulent inducement/fraudulent misrepresentation claims that are based on the premise of "affiliation" and the unsupported and legally unfounded predicate that piercing the corporate veil is justified in this instance.

## II.    BACKGROUND

In July of 2014, UOB contracted with 1662 Multifamily for the construction of a 306-unit apartment project in Celebration, Florida, then known as "Aviva at Celebration" and currently known as "Sola at Celebration" (the "Apartments"). The Apartments consist of six identical four-story residential apartment buildings and a clubhouse. Each of the apartment buildings features L-shaped cantilevered balconies supported by three cantilevered beams on the second through fourth floor corner apartment units, with smaller rectangular cantilevered balconies on the "interior" units. UOB completed the Apartments in March 2016. Later that year, 1662 Multifamily sold the Apartments to Plaintiffs through an Agreement of Sale and Purchase between 1662 Multifamily, LLC and Southstar Capital Group 1, LLC dated July 1, 2016 (the "Agreement"), attached as Exhibit 1 to Plaintiffs' Complaint. (Compl. ¶ 15, Ex. 1, Agreement.) UOB was not a party to this transaction. (*See* Compl. Ex. 1, Agreement at 1.) No separate or additional warranty was given by UOB to Southstar in connection with the sale, and UOB's construction contract with 1662 Multifamily was not assigned to Plaintiffs by 1662 Multifamily. (*See generally id.*)

In February 2017, Southstar Management 1, LLC ("Southstar Management," an affiliate of Plaintiffs and a non-party to this action) notified UOB that some of the cantilevered corner

balconies at the Apartments were deflecting downward. UOB, the architect and the engineer of record for the project, then inspected the situation and determined that the balconies needed to be shored and supported to prevent further movement, the balcony structure exposed, and new structural supports installed, at which time the temporary shoring could be removed and the affected units re-occupied. UOB began performing the work to stabilize and repair the corner balconies in May 2017.

While UOB was performing this work, the Osceola County Building Department posted a Notice of Evacuation at the Apartments on August 14, 2017, stating that the buildings were unsafe to occupy and requiring that the buildings be vacated within 30 days. Notably, the County did not follow its own ordinances requiring notice and hearing before issuing an evacuation order, and the County only provided minimal supporting reasons for its decision. But instead of seeking to challenge the County's Notice of Evacuation, Southstar Management, at the direction of the Plaintiffs, immediately ordered all residents to vacate the buildings within 30 days and began terminating leases. Both Southstar Management and Plaintiffs refused to take any action to challenge the Building Department's Notice of Evacuation despite receiving two reports prepared by UOB's forensic engineering consultant (Wiss Janey Elstner Associates, Inc. "WJE"), stating that in WJE's professional engineering opinion that the Apartments were safe to occupy. During the fall and winter of 2017-2018, UOB continued with the work to stabilize and repair the cantilevered corner balconies, and the parties attempted to negotiate a resolution of the issues at the Apartments.

These efforts at a negotiated resolution failed, and in February 2018 Plaintiffs filed suit against UOB, 1662 Multifamily. and the Other Defendants alleging substantive claims that fall into three categories: (a) claims alleging defective construction by UOB based on negligence and

claimed violations of the Florida Building Code; (b) claims for breach against 1662 Multifamily stemming from its sale of the Apartments; and (c) claims against all the defendants (UOB, 1662 Multifamily, and the Other Defendants) for fraudulent non-disclosure/fraudulent inducement and based on the alleged ability to disregard the separate corporate status of each defendant. As noted above, simultaneously with the filing of this Motion to Dismiss, UOB is filing an Answer and Affirmative Defenses to Plaintiffs' negligence and Florida Building Code violation claims. While UOB denies and disputes Plaintiffs' allegations, it is clear that UOB is the only proper party against whom such claims should be brought—since UOB (and UOB alone) was the general contractor for the construction of the Apartments. Plaintiffs' claims that are based on the purchase of the Apartments from 1662 Multifamily are not sustainable against UOB. Plaintiffs do not and cannot allege that UOB was a party to the Agreement nor can or do Plaintiffs allege that UOB made *any* representations to Plaintiffs (fraudulent or otherwise) regarding the Apartments.

In apparent recognition of their inability to assert viable direct claims against UOB for either breach of contract or fraud relating to the sale of the Apartments, Plaintiffs seek instead to hold UOB liable for the alleged actions of 1662 Multifamily as its "alter ego." (*See* Compl. ¶¶ 42, 51, p. 11.) In support of the assertion that UOB was the alter ego of 1662 Multifamily (and the Other Defendants), Plaintiffs state—in conclusory fashion and with no specific factual support—the following:

- "1662 Multifamily was dominated and controlled by the other Hines Defendants [defined to include all defendants in this lawsuit, including UOB]." (Compl. ¶ 30.)

- The defendants engaged in a "scheme to improperly withhold their knowledge of the Hidden Defects, fraudulently induce the Plaintiffs to purchase the property and use 1662 Multifamily as a protective shield while carrying out the scheme." (*Id.*)

- The defendants "are inextricably intertwined as parts of the same corporate family, all of which are Affiliates under the control and management of Hines Interests LP and JCH [Investments, Inc." (*Id.* ¶ 31.)

- "Upon information and belief, the Hines Defendants operated as a single economic entity that resulted that resulted in an overall element of injustice or unfairness to Plaintiffs in that Defendant 1662 Multifamily, as the Seller of the Property to Plaintiffs, has no assets upon which to compensate Plaintiffs. . .[.]" (*Id.* ¶ 39(a).)

- "Upon information and belief, Defendant 1662 Multifamily was undercapitalized[.]" (*Id.* ¶ 39(b).)

- "Upon information and belief, and as further evidence of the unity of interests, the policy providing insurance for work performed on the property was purchased by, paid for and written in the name of Hines Interests LP." (*Id.* ¶ 39(c).)

- "Upon information and belief, Defendant 1662 Multifamily and the other Hines Defendants failed to observe corporate formalities[.]" (*Id.* ¶ 39(d).)

- "Upon information and belief, Defendant 1662 Multifamily paid dividends or sale proceeds to the Hines Defendants, such that Defendant 1662 Multifamily was rendered undercapitalized or insolvent[.]" (*Id.* ¶ 39(e).)

- "Upon information and belief, the Hines Defendants siphoned funds from Defendant 1662 Multifamily[.]" (*Id.* ¶ 39(f).)

- "Upon information and belief, there was a material absence of separate corporate records among the Hines Defendants[.]" (*Id.* ¶ 39(g).)

- "Upon information and belief, Defendant 1662 Multifamily and UOB were facades for the operations of the other Hines Defendants." (*Id.* ¶ 39(h).)

- "Specifically, as set forth herein, a scheme was carried out by the Hines Defendants, which was premised upon the substantial sharing of the Hines' Defendants' agents' knowledge across and among all of the Hines Defendants so that two of the entities (i.e. Defendants 1662 Multifamily and UOB) could appear to carry out their duties without actually having the resources to do so, and without actually fulfilling those duties." (*Id.* ¶ 40.)

Based on these allegations, Plaintiffs seek to treat UOB, 1662 Multifamily, and the Other Defendants as one collective entity for all purposes. (Compl. at 12.) This is not allowed under the applicable law and Plaintiffs' claims in this regard must be dismissed.

### III.    MEMORANDUM OF LAW

Although UOB was not a party to the Agreement and Plaintiffs do not allege that UOB made any representations to it regarding the Apartments, Plaintiffs seek to hold UOB liable for the alleged actions of 1662 Multifamily through a "Piercing the Corporate Veil/Alter Ego" theory. (*See* Compl. at 11–12.) This attempt is legally invalid. First, piercing the corporate veil is not an independent cause of action. Second, and more importantly, Plaintiffs' have not alleged facts that would support disregarding 1662 Multifamily's corporate form and holding UOB liable as its alter ego under applicable law. For these reasons, Plaintiffs' claims against UOB for fraudulent inducement/fraudulent non-disclosure and breach of contract must be dismissed since Plaintiffs' only theory of liability against UOB on these claims is that it is liable as 1662 Multifamily's alter ego.

### A.    Legal Standard

Pursuant to Florida Rule of Civil Procedure 1.140(b), a defendant is entitled to file a motion to dismiss a claim or complaint for failure to state a cause of action. "The purpose of a motion to dismiss is to test the legal sufficiency of the allegations made in the complaint." *Black Point Assets, Inc. v. Federal National Mortgage Ass'n*, 220 So. 3d 566, 558 (Fla. 5th DCA 2017). In ruling on a motion to dismiss, a trial court is limited to the four corners of the complaint and its incorporated attachments. *One Call Property Servs. Inc. v. Sec. First Ins. Co.*, 165 So. 3d 749, 752 (Fla 4th DCA 2015). The trial court is required to "treat the factual allegations of the complaint as true and to consider those allegations in the light most favorable to the plaintiffs." *E.g. Sigle v. Progressive Consumers Ins. Co.*, 819 So. 2d. 732, 734–35 (Fla. 2002). However, "general, vague and conclusory statements are insufficient to satisfy the requirement that a pleader allege 'a short and plain statement of the ultimate facts showing the pleader is entitled to relief.'" *E.g. Jordan v. Nienhuis*, 203 So. 3d 974, 976 (Fla. 5th DCA 2016)

(*quoting* Fla. R. Civ. P. 1.110(b)). And "a complaint that patches together a string of legal conclusions will not survive a motion to dismiss." *Davis v. Bay County Jail*, 155 So. 3d 1173, 1177 (Fla. 1st DCA 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")).

**B.     Plaintiffs' allegations are insufficient as a matter of law to state a claim against UOB for piercing the corporate veil/alter ego.**

Applying the foregoing legal standards, this Court should dismiss Count 1 of Plaintiffs' Complaint against UOB for "Piercing the corporate veil/alter ego." As an initial matter, it is clear that piercing the corporate veil/alter ego is not an independent cause of action in and of itself under Florida law.[1] But even if it were, Plaintiffs' have not alleged facts that would support disregarding 1662 Multifamily's separate corporate form under the governing law.

**1.     In deciding whether to disregard 1662 Multifamily's corporate form, the Court should apply Delaware Law.**

Applying Florida's choice of law rules to Plaintiffs' "claim" for piercing the corporate veil, the Court should apply the law of 1662 Multifamily's state of incorporation—i.e., Delaware law. (*See* Compl. ¶ 7 ("1662 Multifamily, is a Delaware limited liability company").) Under Florida law, "[c]laims involving 'internal affairs' of corporations, such as the breach of fiduciary duties, are subject to the laws of the state of incorporation." *Chatlos Found., Inc. v. D'Arata*, 882 So.2d 1021, 1023 (Fla. 5th DCA 2004). As multiple courts applying Florida law have recognized, the decision of whether to pierce the corporate veil of an entity is a matter of the

---

[1]     *See Turner Murphy Co. v. Specialty Constructors, Inc.*, 659 So.2d 1242, 1245 (Fla. 1st DCA 1995) ("Piercing a corporate veil is not itself a cause of action any more than the doctrine of respondeat superior is."); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 2010 WL 1531489, at *9 (S.D. Fla. Apr. 16, 2010); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 2010 WL 1531489, at *9 (S.D. Fla. Apr. 16, 2010) ("Alter ego is not a separate cause of action for which relief can be granted; rather, ... alter ego serves as a theory to impose liability on an individual for the acts of a corporate entity."); *Gumbel v. Scott*, 2010 WL 11505125, at *2 (S.D. Fla. Jan. 6, 2010) ("piercing the corporate veil is not an independent cause of action under Florida law"). However, some courts loosely refer to veil piercing as a "claim." *See Acadia Partners, L.P. v. Tompkins*, 759 So. 2d 732, 740 (Fla. 5th DCA 2000) ("The elements of Acadia's claim to pierce the corporate veil were separate from the elements of the other causes of action submitted to the jury.").

internal affairs of the corporation and have applied the law of the state of incorporation as a result. *See Walton Const. Co., LLC v. Corus Bank*, 2011 WL 2938366, at *2 (N.D. Fla. Jul. 21, 2011) ("Because Funding is a limited liability company that is incorporated under the laws of Delaware, this Court applies Delaware law on the question of piercing the corporate veil"); *Friedlander Capital Management Corp.*, 411 B.R. 434 (S.D. Fla. 2009) (concluding under Florida's choice of law rules that the law of the state of incorporation should govern a reverse veil piercing claim and reasoning that "[r]everse veil piercing involves the internal affairs of the Debtor, mainly the rights and liability of the Debtor"); *Pulte Home Corp. v. Ply Gem Indus., Inc.*, 804 F. Supp. 1471, 1489 (M.D. Fla. 1992) (applying Michigan law to veil-piercing allegations on the basis that "the law of the state of incorporation governs the liabilities of the officers or directors to the corporation under Florida's choice-of-law principles").[2]

Here, because 1662 Multifamily is a Delaware limited liability company, (Compl. ¶ 7), the Court should apply Delaware law in determining whether UOB and 1662 Multifamily can be held liable on a veil piercing/alter ego theory.

## 2. Under Delaware law, Plaintiffs have pled insufficient facts to support their veil piercing theory.

"Persuading a Delaware court to disregard the corporate entity is a difficult task." *E.g. Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999). To pierce the corporate veil of 1662 Multifamily and hold UOB liable for the actions of its alleged affiliate, Plaintiffs must allege facts that if taken as true both: (1) demonstrate UOB's "complete domination and control" of 1662 Multifamily to such an extent that 1662 Multifamily "no longer has legal or independent significance of its own," i.e., that

---

[2]    Some Florida federal courts, particularly where the corporation is incorporated in a foreign country, have reached a contrary conclusion and applied Florida law. *See Milliken and Co. v. Haima Group Corp.*, 2010 WL 1286462 (S.D. Fla. Mar. 1, 2010), *adopted*, 2010 WL 1286466 (S.D. Fla. Mar. 30, 2010) (applying Florida law based on the most significant relationship test to the veil-piercing analysis of company organized under Chinese law).

1662 Multifamily is UOB's alter ego; and (2) that *the corporate structure* caused "fraud or similar injustice." *Id.* "Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Id.* Plaintiffs cannot satisfy either prong of the Delaware test.[3]

<blockquote>

(i) *Plaintiffs have pled insufficient facts to show that 1662 Multifamily is the alter ego of UOB.*

</blockquote>

Under Delaware law, determining whether one entity is the alter ego of another is a multifactor test where "no single factor is dominant." *Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954, at *3 (Del. Ch. Jul. 1, 2005). Relevant factors include "whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder." *Id.* (*quoting United States v. Golden Acres, Inc.*, 702 F.Supp. 1097, 1104 (D.Del. 1988)); *see also Walton Const. Co., LLC v. Corus Bank*, 2011 WL 2938366, at *3 (N.D. Fla. Jul. 21, 2011) (applying Delaware law and same factors).

Here, Plaintiffs lump UOB, 1662 Multifamily, and the Other Defendants together, alleging for example that 1662 Multifamily was "dominated and controlled by the other Hines Defendants." (Compl. ¶ 30.) But Plaintiffs do not allege any *facts* in support of these assertions that identify how or when UOB *allegedly* dominated and controlled 1662 Multifamily to the

---

[3]     The requirements of Florida and Delaware law with regard to piercing the corporate veil are quite similar. *See In re Hillsborough Holdings Corp.*, 175 B.R. 223, 244 (M.D. Fla. 2994) ("Florida and Delaware law require that a claimant seeking to pierce the corporate veil between a parent and subsidiary corporation must establish, by a preponderance of evidence, that: 1) the subsidiary was a mere instrumentality of the parent corporation, 2) the parent corporation engaged in improper conduct, and 3) the improper use of the corporate form caused injury to the claimant."). As will be discussed at Section III.B.3 *infra*, even if this Court were to apply Florida law, Plaintiffs' piercing the corporate veil/alter ego claim must still be dismissed.

extent that 1662 Multifamily no longer had any independent significance. Instead, Plaintiffs merely state that UOB is 1662 Multifamily's "Affiliate" (defined by Plaintiffs as being controlled by or under common control with 1662 Multifamily). Plaintiffs do not allege that UOB was 1662 Multifamily's parent, manager, or shareholder, (*See* Compl. ¶¶ 2, 7), and even if they did, under Delaware law common ownership without other factors, it is not enough to pierce the corporate veil. *See Trustees of Village of Arden v. Utility Const. Co.*, 2000 WL 130627, at *4 (Del. Ch. Jan. 26, 2000) ("The undisputed fact that [the entity which owned the project] and [the general contractor that contracted with the owner to build the project] have similar ownership is not sufficient to justify disregarding their business forms."). In fact, Plaintiffs' collective allegations against all of the Other Defendants simply do not state any specific veil-piercing "claim" against UOB. *See Fasco Controls Corp. v. Goble*, 688 So. 2d 1029, 1031 (Fla. 5th DCA 1997) (while complaint alleged that one corporation engaged in conduct, complaint did not specifically allege that other corporate defendants engaged in such conduct).

Moreover, Plaintiffs' attempt to treat multiple affiliated entities as the same without setting forth particular facts that show why the veil of each particular entity should be pierced to its particular owners is unsupported by Delaware law. *See In re The Heritage Organization, L.L.C.*, 413 B.R. 438, 514-15 (Bankr. N.D. Tex. 2009) (applying Delaware law, "the Trustee seeks the global application of alter ego to all of the Entity Defendants so as to collapse the entire Kornman-controlled empire into Kornman, thereby making all of those entities (including Kornman) liable for Heritage's debts, along with whatever debts each of those other entities has, if any, in its own right. However, from the Court's perspective, the alter ego theory relied upon by the Trustee does not work on such a global basis.").

For Plaintiffs' claims to survive, they must be accompanied by facts that satisfy

Delaware's two-pronged test at each level of ownership. And even if Plaintiffs could establish that 1662 Multifamily's corporate form should be disregarded vis-à-vis *its* owners, Plaintiffs must also establish that the corporate status of 1662 Multifamily's owners should be disregarded vis-a vis *their* owners. *See id.* at 516 (the Trustee "was required to satisfy the Delaware two-pronged test at each level or layer of ownership"). Plaintiffs have not and cannot do so.

Here, Plaintiffs have simply "lumped" 1662 Multifamily and the Other Defendants together without attempting to distinguish between them. Plaintiffs' alter ego allegations are conclusory at best, and merely restate the factors courts consider when applying Delaware (or Florida) law. But none of Plaintiffs' statements are accompanied by particular factual allegations and as such they cannot survive a motion to dismiss. The following table demonstrates the insufficiency of Plaintiffs' Complaint in this regard.

| Alter Ego Factors | Plaintiffs' Allegations (emphasis added) |
|---|---|
| Whether the corporation was adequately capitalized for the corporate undertaking. *E.g. Mason*, 2005 WL 1653954, at *3. | "*Upon information and belief*, Defendant 1662 Multifamily was undercapitalized[.]" (Compl. ¶ 39(b).) |
| Whether the corporation was solvent. *Id.*<br><br>Whether dividends were paid. *Id.* | "*Upon information and belief*, Defendant 1662 Multifamily paid dividends or sale proceeds to the Hines Defendants, such that Defendant 1662 Multifamily was rendered undercapitalized or insolvent[.]" (*Id.* ¶ 39(e).) |
| "[W]hether corporate records were kept, officers and directors functioned properly, and other corporate formalities were observed." *Id.* | "*Upon information and belief*, Defendant 1662 Multifamily and the other Hines Defendants failed to observe corporate formalities[.]" (*Id.* ¶ 39(d).)<br>"*Upon information and belief*, there was a material absence of separate corporate records among the Hines Defendants[.]" (*Id.* ¶ 39(g).) |
| Whether the dominant shareholder siphoned corporate funds. *Id.* | "*Upon information and belief*, the Hines Defendants siphoned funds from Defendant 1662 Multifamily[.]" (*Id.* ¶ 39(f).) |
| Whether the corporation simply functioned as a façade for the dominant shareholder. | "*Upon information and belief*, Defendant 1662 Multifamily and UOB were facades for the operations of the other Hines Defendants." (Id. ¶ 39(h).) |

The foregoing conclusory assertions merely restate the elements of the cause of action in a non-specific manner and are insufficient to withstand a motion to dismiss. *See, e.g., Turnberry Village North Tower Condominium Ass'n, Inc. v. Turnberry Village South Tower Condominium Ass'n, Inc.*, 224 So.3d 266, 267 (Fla. 3rd DCA 2017) (affirming dismissal of complaint for failure to state a claim, reasoning that "[plaintiff's]amended complaint contained a mechanical recitation of the elements of the cause of action, and, in particular, only conclusory allegations that appellee substantially assisted or encouraged the wrongdoing."); *Stein v. BBX Capital Corp.*, 2018 WL 1410715, at \*1 (Fla. 4th DCA Mar. 21, 2018) ("To survive a motion to dismiss, a complaint must allege sufficient ultimate facts showing entitlement to relief. While we must accept the facts alleged as true and make all reasonable inferences in favor of the pleader, conclusory allegations are insufficient.") (internal quotations and citations omitted).  Indeed, there are no factual allegations in support. *See generally* Compl.

But even if such threadbare allegations were considered, they do not entitle Plaintiffs to disregard 1662 Multifamily's corporate form. First, while Plaintiffs allege that 1662 Multifamily was undercapitalized, they allege that 1662 Multifamily became undercapitalized when it paid dividends or sale proceeds to the Other Defendants. (*See* Compl. ¶¶ 39(b), 39(e).)  However, passing income along to the owners of a pass-through entity (such as an LLC) simply does not warrant piercing the corporate veil—it is the legitimate purpose of pass-through entities. Likewise, allegations that 1662 Multifamily became insolvent or undercapitalized are insufficient grounds to disregard its corporate form, for if that were the case, the corporate form of every insolvent subsidiary would be disregarded. *See, e.g., In re BHS & B Holdings LLC*, 420 B.R. 112, 137 (Bankr. S.D.N.Y. 2009) (applying Delaware law, reasoning that "undercapitalization is rarely sufficient to pierce the corporate veil, because otherwise the veil of

every insolvent subsidiary or failed start-up corporation could be pierced.") (internal quotations omitted).

Likewise, Plaintiffs' conclusory allegations that UOB, 1662 Multifamily, and the Other Defendants failed to observe corporate formalities is entitled to little weight in the alter ego analysis because, as many courts have recognized, Delaware law requires few formalities for limited liability companies (such as 1662 Multifamily and UOB). *See NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 178 (2d Cir. 2008) (Applying Delaware law, "[i]n the alter-ego analysis of an LLC, somewhat less emphasis is placed on whether the LLC observed internal formalities because fewer such formalities are legally required."); *In re BHS & B Holdings, LLC*, 420 B.R. at 138 ("Indeed, the Delaware Limited Liability Company Act . . . requires little more than that an LLC execute a proper certificate of formation, maintain a registered office in Delaware, have a registered agent for service of process in Delaware, and maintain certain records for membership and tax purposes.").

Further, Plaintiffs' specific factual allegations relevant to the alter ego analysis are insufficient as a matter of law to conclude that 1662 Multifamily is the alter ego of UOB. Plaintiffs have alleged that "[u]pon information and belief, and as further evidence of the unity of interests, the policy providing insurance for work performed on the property was purchased by, paid for and written in the name of Hines Interests LP." (Compl. ¶ 39(c).) But such an allegation with regard to Hines Interests LP is irrelevant to the question of whether UOB and 1662 Multifamily are alter egos of each other. And the fact that an entity with an economic interest in the Apartments (i.e. Hines Interests LP as the alleged parent of 1662 Multifamily) assisted its subsidiary in procuring an insurance policy is hardly evidence that the parent and subsidiary were alter egos of each other or had such identical interests and operations that their

separate legal identities should be disregarded. Likewise, Plaintiffs' allegation that UOB, 1662 Multifamily, and the Other Defendants "are inextricably intertwined as parts of the same corporate family, all of which are Affiliates under the control and management of Hines Interests LP and JCH [Investments, Inc.[,]" (Compl. ¶ 31), is insufficient, for "[c]ourts refuse to pierce the veil just because parent corporations retain decision-making authority over subsidiaries." *In re BHS & B Holdings LLC*, 420 B.R. at 138.

It is clear that Plaintiffs have not alleged facts sufficient to show that 1662 Multifamily is the alter ego of UOB under Delaware law. Accordingly, Plaintiffs' "claim" for piercing the corporate veil/alter ego must be dismissed.

> (ii)   *Nor have Plaintiffs pled sufficient facts to show that 1662 Multifamily's corporate structure causes fraud or similar injustice.*

Even if Plaintiffs' allegations were sufficient to establish that 1662 Multifamily is the alter ego of UOB (which they are not), "[t]o state a 'veil-piercing claim,' the plaintiff must also plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003). Stated differently, Plaintiffs must allege facts that if taken as true demonstrate that 1662 Multifamily's corporate structure causes "fraud or similar injustice." *Wallace*, 752 A.2d at 1183. Plaintiffs have not done so.

Plaintiffs' allegations on this point are essentially that 1662 Multifamily committed fraud and breached the Agreement in selling the Apartments, but now allegedly lacks assets to satisfy a judgment. Specifically, Plaintiffs allege that UOB and the Other Defendants participated in a "scheme" to withhold their collective knowledge of "hidden defects" at the Apartments to fraudulently induce Plaintiffs to purchase the property and "use 1662 Multifamily as a protective shield while carrying out the scheme." (*See* Compl. ¶ 30.) Plaintiffs further allege that this

"scheme" resulted in an "overall element of injustice or unfairness to Plaintiffs in that Defendant 1662 Multifamily, as the Seller of the Property to Plaintiffs, has no assets upon which to compensate Plaintiffs . . . ." (*Id.* ¶ 39(a).) These allegations are insufficient as a matter of law, because they fail to allege a fraud or injustice distinct from the underlying alleged wrong. *See Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, 2004 WL 415251, at \*4 (Del. Ch. Mar. 4, 2004) ("Medi-Tec's alter ego argument also fails because it has not alleged that the corporate form in and of itself operates to serve some fraud or injustice, distinct from the alleged wrongs of BLS France."); *In re Foxmeyer Corp.*, 290 B.R. 229, 236 (Bankr. D.Del. 2003) ("the underlying cause of action, at least by itself, does not supply the necessary fraud and injustice[.]").

The only possible injustice identified by Plaintiffs is that 1662 Multifamily may lack sufficient assets to satisfy a judgment. But as multiple courts have held, difficulty in enforcing a judgment is simply not an injustice that warrants the exceptional remedy of piercing the corporate veil. *See Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008) ("Delaware courts have held that the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil."); *Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954, at \*3 (Del. Ch. Jul. 1, 2005) ("If creditors could enter judgments against shareholders every time a corporation became unable to pay its debts as they become due, the limited liability characteristic of the corporate form would be meaningless.").

Because Plaintiffs have not alleged facts sufficient to establish that 1662 Multifamily's corporate structure causes or has been used to perpetrate a fraud or similar injustice (distinct from the underlying alleged wrongs), Plaintiffs' "claim" for piercing the corporate veil/alter ego must be dismissed.

3.     **Even if the Court were to apply Florida law, Plaintiffs' allegations do not support disregarding the separate corporate form of 1662 Multifamily.**

Even if the Court were to apply Florida law to Plaintiffs' piercing the corporate veil/alter ego claim, Plaintiffs cannot state a claim. To pierce the corporate veil under Florida law, a plaintiff must establish that: "(1) *the shareholder* dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *E.g. Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) (emphasis added).

As discussed above (Section III.B.2), Plaintiffs' Complaint contains no specific allegations regarding how UOB dominated or controlled 1662 Multifamily to the extent that 1662 Multifamily's independent existence was non-existent. Nor do Plaintiffs' allege that UOB was a shareholder or had any ownership interest in 1662 Multifamily (as required by the first element of the Florida test). Instead, Plaintiffs improperly lump UOB, 1662 Multifamily and the Other Defendants together and merely restate the factors courts consider when deciding whether corporations are alter-egos of each other. *See supra* at 9–10. Such bare legal conclusions are insufficient to survive a motion to dismiss. *E.g. Jordan*, 203 So.3d at 976. Finally, Plaintiffs' have not alleged any facts supporting a fraud or improper conduct stemming from UOB's use of 1662 Multifamily's corporate form that is different from the underlying causes of action at issue (i.e., fraud and breach of contract by 1662 Multifamily relating to the sale of the Apartments).

For all these reasons, even if the Court were to apply Florida law, Plaintiffs' "claim" for piercing the corporate veil/alter ego must be dismissed.

C.     **Plaintiffs fail to state a claim against UOB for fraudulent non-disclosure/fraudulent inducement, because Plaintiffs do not allege that UOB made *any* representations to Plaintiffs related to the sale of the Apartments.**

Plaintiffs' claims against UOB for fraudulent non-disclosure/fraudulent inducement must also be dismissed, because Plaintiffs fail to allege that UOB made *any* actionable representations or had a duty to disclose material facts to Plaintiffs. "The elements of fraudulent misrepresentation and fraudulent inducement are: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *E.g. Moriber v. Dreiling*, 194 So. 3d 369, 373 (Fla. 3rd DCA 2016). Likewise the elements of a fraudulent non-disclosure claim in the sale of residential real property are: "(1) the seller of a home must have knowledge of a defect in the property, (2) the defect must materially affect the value of the property, (3) the defect must be not readily observable and must be unknown to the buyer, and (4) the buyer must establish that the seller failed to disclose the defect to the buyer." *E.g. Jensen v. Bailey*, 76 So. 3d 980, 983 (Fla. 2d DCA 2011).

Both these claims require as a prerequisite that the defendant make a representation or have a duty to disclose material facts to the plaintiff. However, Plaintiffs do not allege that UOB made any representations related to the sale of the Apartments. Instead, Plaintiffs allege that 1662 Multifamily owed Plaintiffs a duty of disclosure, as well as "the other Hines Defendants, as alter egos of Defendant 1662 Multifamily[.]" (Compl. ¶ 42.) But Plaintiffs' claims for piercing the corporate veil/alter ego must be dismissed (for the reasons discussed above) and therefore for Plaintiffs to state a viable claim against UOB for fraudulent misrepresentation/fraudulent non-disclosure, Plaintiffs must plead facts establishing that UOB made an actionable misrepresentation to Plaintiffs or that UOB owed Plaintiffs a duty of disclosure separate from

1662 Multifamily.  Plaintiffs have not done either.  Accordingly, Plaintiffs' claim for fraudulent misrepresentation/fraudulent non-disclosure as stated in Count II of their Complaint must be dismissed.

Moreover, Plaintiffs' claim for fraudulent non-disclosure must also be dismissed because as a matter of law, a seller of commercial property simply owes no duty of disclosure to a sophisticated purchaser.  *See Wasser v. Sassoni*, 652 So. 2d 411, 413 (Fla. 3rd DCA 1995) ("a sophisticated purchaser of commercial property who agreed to an "as is" purchase contract, had ample opportunity to conduct inspections, and could have discovered an alleged defect through the exercise of ordinary diligence, may be disgruntled, but does not have a cause of action for fraud.").  In *Wasser*, the Third District Court of Appeal refused to extend the Florida Supreme Court's holding in *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985), which created a cause of action for fraudulent non-disclosure in residential real-estate transactions, to apply to the sale of an apartment building.  *Id.* at 412-13.  The court reasoned that *Johnson* did not extend a duty of disclosure to commercial transactions, "and thus did not change the long line of case law establishing caveat emptor as the rule in the sale of commercial property." *Id.* at 412 (internal quotations omitted).

Simply put, neither 1662 Multifamily nor UOB owed Plaintiffs a duty of disclosure in connection with the sale of the Apartments and thus Plaintiffs' claim for fraudulent non-disclosure must be dismissed on this basis as well.

**D.    Plaintiffs fail to state a claim against UOB for breach of contract because UOB is not a party to the contract at issue.**

Finally, for reasons similar to the foregoing, Plaintiffs' claim against UOB for breach of contract must be dismissed.  The elements of a breach of contract claim are "(1) a valid contract; (2) a material breach; and (3) damages." *E.g. Abbott Laboratories, Inc. v. General Elec. Capital*,

765 So. 2d 737, 740 (Fla. 5th DCA 2000). It is axiomatic that for one to be bound by a contract, one must be a party to the contract. *See, e.g., Mendez v. Hampton Court Nursing Center, LLC,* 203 So. 3d 146, 151 (Fla. 2016) (holding non-party was not bound by arbitration agreement he did not sign).

In this case, Plaintiffs do not allege that UOB is a party to the Agreement, because in fact UOB is not a party to the Agreement. (*See* Compl. Ex. 1 at 1.) Instead Plaintiffs have alleged that "the Agreement is a valid and enforceable contract between Plaintiff Southstar [Capital Group I, LLC] and Defendant 1662 Multifamily" and that "the other Hines Defendants are a party to the Agreement as alter egos of Defendant 1662 Multifamily." (Compl. ¶¶ 50-51.) However, because as set forth herein, Plaintiffs' claims for piercing the corporate veil/alter ego must be dismissed, Plaintiffs' breach of contract claim against UOB fails because UOB is not a party to the Agreement.

As a result, Plaintiffs' claim for breach of contract as stated in Count III of Plaintiffs' Complaint must be dismissed.

### IV.   CONCLUSION

For the foregoing reasons, Defendant Urban Oaks Builders LLC requests that the Court dismiss Plaintiffs' claims for Piercing the Corporate Veil/Alter Ego (Count I of Plaintiffs' Complaint), Fraudulent Non-Disclosure/Fraudulent Inducement (Count II of Plaintiffs' Complaint), and Breach of Contract (Count III of Plaintiffs' Complaint) under Rule 1.140(b)(6) of the Florida Rules of Civil Procedure.

**DATED:** May 18, 2018

Respectfully Submitted,

/s/Jason A. Perkins
Jason A. Perkins, Esq.
Florida Bar Number 0610852
Carlton Fields, P.A.
450 S. Orange Avenue
Orlando, Florida 32801-3370
Telephone:    407.244.8250
Facsimile:    407.648.9099
E-Mail: jperkins@carltonfields.com

*Attorneys for Defendant Urban Oaks Builders LLC*

OF COUNSEL:

BAKER BOTTS, L.L.P.
Joseph A. Colagiovanni
Texas Bar No. 24104457 (*Pro Hac Vice Pending*)
Katherine A. Brooker
Texas Bar No. 24075772 (*Pro Hac Vice Pending*)
One Shell Plaza
910 Louisiana
Houston, Texas 77002
Telephone: 713.229.1222
Facsimile: 713.229.7922
joseph.colagiovanni@bakerbotts.com
katherine.brooker@bakerbotts.com

## CERTIFICATE OF SERVICE

I hereby certify that on Friday, May 18, 2018, I electronically filed the foregoing with the

Clerk of the Court and that a copy was sent to all known counsel of record via electronic mail at

the addresses listed below:

Michael A. Hornreich
Steven D. Gonzales
Weinberg Wheeler Hudgins, Guin & Dial, LLC
255 South Orange Avenue, Suite 1260
Orlando, FL 32801
mhornreich@wwhgd.com
sgonzales@wwhgd.com

Ramon A. Rasco
Podhurst Orseck, P.A.
1 SE 3rd Avenue, Suite 2700
Miami, FL 33131
rrasco@podhurst.com

/s/Jason A. Perkins
Jason A. Perkins, Esq.