## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

IN RE:

URBAN OAKS BUILDERS LLC, Debtor.

CHAPTER 11 CASE

CASE NO. 18-34892 (S.D. Tex.)

---

SOUTHSTAR CAPITAL GROUP, I, LLC,
COTTINGTON ROAD TIC, LLC, and
DURBAN ROAD TIC, LLC,

      Plaintiffs,

vs.

1662 MULTIFAMILY LLC, HINES 1662
MULTIFAMILY, LLC, HINES
INVESTMENT MANAGEMENT
HOLDINGS LIMITED PARTNERSHIP,
HIMH GP, LLC, HINES INTEREST
LIMITED PARTNERSHIP, JCH
INVESTMENTS, INC, and URBAN
OAKS BUILDERS LLC

      Defendants.

_____/

CASE NO. 6:18-cv-1453-ORL-31-GIK

(Case No. 2018-CA-415-OC,
Circuit Court of the Ninth Judicial
Circuit, Osceola County, Florida)

## MOTION TO TRANSFER VENUE

Urban Oaks Builders LLC ("UOB" or "Debtor"), the debtor in a Chapter 11 case pending

in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the

"UOB Bankruptcy" pending in the "Texas Bankruptcy Court") and defendant in the above-

captioned adversary proceeding (the "Adversary Proceeding"), respectfully moves this Court for

entry of an order pursuant to 28 U.S.C. § 1412 or, in the alternative, 28 U.S.C. § 1404(a),

transferring the Adversary Proceeding from this Court to the Texas Bankruptcy Court.

# I.  INTRODUCTION

1.      This Adversary Proceeding is one of two lawsuits related to allegedly defective construction at an apartment project that UOB built as the general contractor and completed in 2016.  In *Southstar Capital Group I, LLC, et al., v. 1662 Multifamily LLC, et al.*, Case No. 2018-CA-000415-OC in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida, Southstar Capital Group I, LLC, Cottington Road TIC, LLC, and Durban Road TIC, LLC (collectively "Southstar"), brought negligence and statutory claims for violations of the Florida Building Code against UOB based on allegedly defective construction by UOB. Plaintiffs also brought fraud and breach of contract claims against UOB and other entities under common ownership with UOB pertaining to Plaintiffs' purchase of an apartment project. (Compl. at 1-2).  On August 31, 2018 UOB filed for bankruptcy in the Southern District of Texas.  Subsequently the Adversary Proceeding was removed to this Court, where it is currently pending.

2.      UOB sought Chapter 11 bankruptcy protection primarily because its commercial general liability insurance carriers wrongfully refused to provide coverage for and defend and indemnify UOB from, the claims asserted by Plaintiffs in the Adversary Proceeding.  Before filing for Chapter 11 protection, UOB had filed a declaratory judgment action against its insurance carriers styled *Hines Interests Limited Partnership, et al., v. Southstar Capital Group I, LLC, et al.*, Case No. 2018-CA-01845, in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida (the "Coverage Lawsuit") seeking a declaratory judgment requiring UOBs insurance carriers to provide coverage for and defend and indemnify UOB from Plaintiffs' claims in the Adversary Proceeding.  (Coverage Compl.[1] at 1.)  On July 17, 2018 the Coverage Lawsuit was removed by one of UOB's insurance carriers to the United States District Court for

---

[1]      The complaint from the coverage lawsuit is cited as "Coverage Compl."

the Middle District of Florida, Orlando Division, in an action styled *Hines Interests Limited Partnership, et al., v. Southstar Capital Group I, LLC, et al.*, Case No. 6:18-CV-1147-ORL-22DCI.   Concurrently with the filing of this motion, UOB is filing a motion to transfer the Coverage Lawsuit to the Texas Bankruptcy Court.

3.      As a Chapter 11 debtor in the Texas Bankruptcy Court, claims against UOB are automatically stayed under 11 U.S.C. § 362(a), and those claims must be resolved in the Texas Bankruptcy Court.   The expected litigation costs and alleged liabilities in the Adversary Proceeding and the Coverage Lawsuit, both as to the Plaintiffs and to Other Defendants which UOB may be obligated to indemnify or who maybe be obligated to indemnify UOB, could substantially exceed the claims of UOB's other creditors.   Transfer to the Texas Bankruptcy Court is necessary to serve the interest of efficient administration of the estate and equal treatment of all creditors.

4.      Further, UOB and the Other Defendants in the Adversary Proceeding have strong ties to the state of Texas, and particularly the city of Houston.   UOB has its principal place of business in Houston, Texas.   (Compl. ¶ 7.)   All of the Other Defendants in the Adversary Proceeding have their principal place of business in Houston, and many are Texas entities. (*Id* ¶¶ 7-14.)   In addition, Southstar Capital Group I, LLC, the lead plaintiff in the Adversary Proceeding, owns, manages, or operates multiple apartment complexes in and around Houston. And, most importantly, UOB's Chapter 11 bankruptcy is pending in Houston.

5.      Houston is the most efficient venue for all parties concerned because of its close connection to the parties and circumstances of these cases.   As discussed further below, UOB requests the Adversary Proceeding to be transferred to the Texas Bankruptcy Court.

## II. BACKGROUND

6.     The UOB Bankruptcy emerges from defective construction claims against UOB and Other Defendants made by the Plaintiffs relating to an apartment project with respect to which UOB served as the general contractor and constructor.  The parties and their relationship to these claims are explained below.

7.     Debtor Urban Oaks Builders LLC is a Delaware limited liability company, with its principal place of business in Houston, Texas. (Compl. ¶ 8.)

8.     Upon information and belief, and at all times material hereto, Plaintiff Southstar Capital Group, I, LLC is a Florida limited liability company.  (Compl. ¶ 15.)  Southstar Capital Group I, LLC, owns, operates and manages apartment complexes across Texas and Florida. According to Southstar's website, four of its apartment complexes of a total of six or more complexes are located in Houston and the Greater Houston Area.

9.     Upon information and belief, and at all times material hereto, Plaintiff Cottington Road TIC, LLC is a Delaware limited liability company.  (Compl. ¶ 5.)

10.     Upon information and belief, and at all times material hereto, Plaintiff Durban Road TIC, LLC is a Delaware limited liability company.  (Compl. ¶ 6.)

11.     Defendant Hines Interests Limited Partnership is a Texas limited partnership. Defendant 1662 Multifamily LLC is a Delaware limited liability company.  (Compl. ¶ 14.) Defendant Hines 1662 Multifamily, LLC is a Delaware limited liability company.  (Compl. ¶ 8.) Defendant Hines Investment Management Holdings Limited Partnership is a Texas limited partnership. (Compl. ¶ 10.)  Defendant HIMH GP, LLC is a Delaware limited liability company. (Compl. ¶ 11.)  Defendant Hines Real Estate Holdings Limited Partnership is a Texas limited partnership.   (Compl. ¶ 12.)   Defendant JCH Investments, Inc. is a Texas corporation (collectively the "Other Defendants").  (Compl. ¶ 13.)

12.     In July of 2014, UOB contracted with 1662 Multifamily, one of the Other Defendants, to construct a 306-unit apartment complex located at 1662 Celebration Blvd., Celebration, Florida 34747. This project was known as "Aviva at Celebration," and is now known as "Sola at Celebration" (the "Celebration Apartments").

13.     The Celebration Apartments consist of six identical four-story residential apartment buildings and a club house. 1662 Multifamily was the original owner of the Celebration Apartments, and UOB was retained by 1662 Multifamily to be the general contractor and constructor for the project. UOB began construction of the Celebration Apartments in July 2014 and completed them in March 2016.

14.     On July 1, 2016, 1662 Multifamily sold the Celebration Apartments to Plaintiffs through an Agreement of Sale and Purchase between 1662 Multifamily, LLC and Southstar Capital Group I, LLC dated July 1, 2016. (Compl. ¶ 15.) UOB was not a party to this transaction. (*See* Compl. Ex. 1, Agreement at 1.) The sale was an on an as is, where is basis. No warranty was given by UOB to Southstar in connection with the sale, and UOB's construction contract with 1662 Multifamily was not assigned to Plaintiffs by 1662 Multifamily. (*See generally id.*)

15.     In February 2017, Southstar Management I, LLC ("Southstar Management," an affiliate of Plaintiffs and a non-party to this action) notified UOB that some of the cantilevered corner balconies at the Celebration Apartments were deflecting downward. UOB made sustained efforts to stabilize and repair the corner balconies in May 2017. During the fall and winter of 2017-2018, UOB continued with the work to stabilize and repair the cantilevered corner balconies, and the parties attempted to negotiate a resolution of the issues at the Celebration Apartments.

16.     These efforts at a negotiated resolution failed and in February 2018, Plaintiffs brought various claims against UOB and the Other Defendants connected to the purchase of the Project.   (*See generally* Compl.)   These claims—the Adversary Proceeding referenced throughout this motion—were originally brought in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida and the Adversary Proceeding was removed to this Court after UOB's bankruptcy filing.

17.     Plaintiffs' alleged alter ego liability of UOB and the Other Defendants and asserted claims against all of them for: (a) defective construction based on negligence and claimed violations of the Florida Building Code, and (b) fraudulent non-disclosure/fraudulent inducement.  (*See* Compl. ¶¶ 26, 38-73.)

18.     UOB answered the Complaint on April 18, 2018.  UOB and the Other Defendants also filed separate Motions to Dismiss with the state court.  The Motions to Dismiss are currently pending in state court as of the filing of this Notice of Removal.  Prior to the removal of this action, UOB filed two motions to extend its time to respond to Plaintiffs' discovery requests, and the Other Defendants filed a motion to stay discovery pending a ruling on their motion to dismiss.

19.     As part of their claims underlying the Adversary Proceeding, Plaintiffs have alleged that the cost to repair the allegedly defective work and resulting damages (including lost rent allegedly caused by a need to vacate the apartments resulting from the defective work) total to over $45,000,000.  *Id.*  These potential liabilities increase further with each passing month, at a rate of $451,000, based on Plaintiffs' claim for lost rent alone.

20.     These liabilities are magnified by the conduct of UOB's commercial general liability insurance carriers, which gave rise first to the Coverage Lawsuit and ultimately to

UOB's Chapter 11 filing.   UOB and the Other Defendants hold various general liability insurance contracts covering the project with Gemini Insurance Company ("Gemini"), Ironshore Specialty Insurance Company ("Ironshore"), Navigators Specialty Insurance Company ("Navigators"), and Great American Assurance Company ("Great American") (collectively the "Insurance Carriers"). (*See* Exhibit A, Coverage Compl. ¶¶ 28-30).   These insurance contracts were issued under a controlled insurance plan ("CIP") which provided commercial general liability insurance for UOB and subcontractors for their work on the Project.  *Id.*

21.    The CIP acted as a single policy that covered the entirety of the Project and obligates the Insurance Carriers to cover UOB and the Other Defendants for liability and property damage, including as alleged in the State Court Action.  *Id.*  In total, the policies issued by the Insurance Carriers cover a significant portion of Plaintiffs' alleged damages in the State Court Action.  (*Id.* ¶¶ 34-41).

22.    To date, Gemini, Ironshore, and Navigators (the Insurance Carrier Defendants") have refused to provide coverage for and defend and indemnify UOB or the Other Defendants from the claims asserted by Plaintiffs in the Adversary Proceeding.  (*Id.* ¶¶ 48-52).  As a result, UOB and the Other Defendants filed the Coverage Lawsuit against the Insurance Carrier Defendants in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida, styled *Hines Interests Limited Partnership, et al., v. Southstar Capital Group I, LLC, et al.*, Case No. 2018-CA-01845 seeking a declaratory judgment requiring them to honor their obligation to provide coverage for and defend and indemnify UOB in the State Court Action.  (*See generally,* Ex. A, Coverage Compl.)  On July 17, 2018 the Coverage Lawsuit was removed by Gemini to the United States District Court for the Middle District of Florida, Orlando Division, in an action styled *Hines Interests Limited Partnership, et al., v. Southstar Capital Group I, LLC, et al.*, Case

No. 6:18-CV-1147-ORL-22DCI.  Additionally, on June 7, 2018, UOB filed a complaint against Ironshore with the Texas Department of Insurance for Ironshore's failure to honor its obligations to UOB.  (Ex. B, TDI Complaint.)

23.     Because of the significant costs of the above listed liabilities—combined with the uncertainty caused by the Insurance Carrier Defendants' unwillingness to commit to defend and indemnify UOB—UOB filed a voluntary petition for Chapter 11 bankruptcy relief on August 31, 2018 in the United States Bankruptcy Court for the Southern District of Texas, Case No. 18-34892.  This case was assigned to the Honorable Marvin Isgur.

24.     On September 6, 2018, UOB removed the Adversary Proceeding from the Circuit Court of the Ninth Judicial District in and for Osceola County, Florida, to this Court.

## III.  JURISDICTION

25.     Federal district courts' jurisdiction under 28 U.S.C. § 1334 extends to those proceedings arising under title 11, those 'arising in' a case under title 11, and those 'related to' a case under title 11.  28 U.S.C. § 1334(b).  The first two categories, "arising under" and "arising in," are both "core" bankruptcy proceedings.  "Core proceedings are proceedings which have no existence outside of bankruptcy."  *In re Wesche*, 178 B.R. 542, 543 (Bankr. M.D. Fla. 1995) *citing In re Gardner*, 913 F.2d 1515 (10th Cir. 1990).  Here, Plaintiffs' claims against UOB in the Adversary Proceeding are claims against the Debtor and the Debtor's property and are thus core proceedings.

26.     The claims against the Other Defendants come within the Court's "related to" jurisdiction, which attaches to claims that have a "conceivable effect" on the bankruptcy estate.  Such proceedings "do not depend on the bankruptcy laws for their existence and could proceed in another court."  *Id*.; *In re Woods*, 825 F.2d 90 (5th Cir. 1987).  Rather, they are "related to" the bankruptcy case, *see* 28 U.S.C. § 1334(b), a designation which applies to "any proceeding

that would have *any effect at all on* the outcome of the bankruptcy proceeding." *In re Auto Dealer Services, Inc.*, 96 B.R. 360, 362 (Bankr. M.D. Fla.1989) (emphasis added); *see also In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995) ("[A] proceeding is related to a bankruptcy if the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.") (emphasis added).

27.     The "jurisdictional grant" of "related to" proceedings is "extremely broad." *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999).  If the outcome of a proceeding could conceivably impact the bankruptcy estate, that proceeding is related to the bankruptcy.  The bankruptcy court for the Middle District has recognized the extreme breadth of this test, noting that "[a] conceivable effect includes the alteration of the debtor's rights, liabilities, options, or freedom of action, as well as *any impact on the handling or administration of the debtor's estate*." *In re Rolsafe Intern., LLC*, 477 B.R. 884, 895 (Bankr. M.D. Fla. 2012.) (emphasis added).

28.     The claims against the Other Defendants fall within the Court's "related to" jurisdiction.  The apportioning of additional liability to a non-UOB defendant might increase what part of the bankruptcy estate (if any) that Plaintiffs are entitled to; conversely, if UOB is found less liable than another defendant, this might increase the resources available for non-Plaintiff creditors.  Further, the bankruptcy estate is mostly comprised of the insurance contracts which are part of the CIP that purports to cover the Other Defendants in addition to UOB.  The resolution of claims against any the Other Defendants covered by the CIP insurance policies would clearly impact the bankruptcy estate.  The intertwining of liabilities and the underlying factual circumstances between the claims against UOB and the other entities create a multitude of "conceivable" ways the resolution of these claims could impact the Debtor's estate.

29.     The Adversary Proceeding claims are all related to the UOB bankruptcy, and the claims specific to UOB are core.  These claims should be all transferred to the Texas Bankruptcy Court.

## IV.  ARGUMENT AND AUTHORITIES

30.     Transfer is appropriate under both 28 U.S.C. § 1412 and 28 U.S.C. § 1404(a).  The claims asserted by the Plaintiffs against UOB are claims related to the UOB Bankruptcy.  While these claims are stayed, allowing the Adversary Proceeding to proceed against the remaining Other Defendants would negatively impact UOB and its estate.  Both for the efficient administration of the estate and the convenience to the parties, it is imperative that the Texas Bankruptcy Court control all litigation for the benefit of UOB and its various creditors.

31.     Efficiency dictates that all claims against *all* Defendants in the above cases be transferred to the Texas Bankruptcy Court.  As established above, the claims asserted by the Plaintiffs against the Other Defendants are "related to" the UOB bankruptcy because their "outcome . . . could *conceivably* have an[] effect on the estate being administered in bankruptcy." *Matter of Wood*, 825 F.2d 90,93 (5th Cir. 1987) (emphasis in original); *see also supra* Section III.  While courts are split over which transfer statute—§ 1412 or § 1404(a)— governs the transfer of such "related to" actions, in essence the same factors are considered in analyzing transfers under both statutes.  *See McLeroy v. State of Florida Dept. of Juvenile Justice*, 4:06-CV-122-SPM, 2006 WL 1234907, at *1 (Bankr. N.D. Fla. Apr. 5, 2006) (applying § 1404 to transfer a case to the Bankruptcy Court of the Northern District of Florida's Panama City Division); *see also*, *In re Penn-Mont Benefit Services, Inc.*, 3:13-BK-05986-JAF, 2013 WL 6405046, at *2 (Bankr. M.D. Fla. Dec. 6, 2013) (applying § 1412 to transfer cases to the Philadelphia Division of the United States Bankruptcy Court for the Eastern District of Pennsylvania); *Campbell v. Williams*, No. 1:14-CV-097, 2015 WL 3657627, at *2 (S.D. Tex.

June 12, 2015) ("[C]ourts apply essentially the same factors in analyzing transfers under §§ 1404(a) and 1412."). Fundamentally, "choosing one transfer provision over the other generally has no effect on the ultimate transfer decision." *Id.* UOB therefore seeks transfer under both § 1412 and § 1404(a) and will accordingly address both.

<u>**Transfer is Warranted Under 28 U.S.C. § 1412 In the Interests of Justice and Convenience**</u>

32.     Section 1412 provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. A transfer under this section is appropriate if it is *either* "in the interest of justice" *or* "for the convenience of the parties." *In re Penn*, 2013 WL 6405046, at *10; *see also Campbell*, 2015 WL 3657627, at *3; *In re Bruno's, Inc.*, 227 B.R. 311, 324 (Bankr. N.D. Ala. 1998). Here, transfer would be *both* in the interest of justice and for the convenience of the parties.

33.     "A bankruptcy court may exercise discretion in adjudicating a motion under section 1412, considering both convenience and fairness on a case-by-case basis." *Unico Holdings, Inc. v. Nutramax Products, Inc.*, 264 B.R. 779, 783 (Bankr. S.D. Fla. 2001.) "The 'interest of justice' is a broad and flexible standard." *In re Penn*, 2013 WL 6405046, at *10 (citing *In re Blumeyer*, 224 B.R. 218, 220 (Bankr. M.D. Fla. 1998) (internal citation omitted.)). It requires a court to determine if "a change of venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness." *Id.* Similarly, convenience dictates an examination of the burdens of transfer as to the plaintiffs, defendants, debtors and any creditors. *Id.*

34.     The "principal criteria" identified by courts in determining both convenience and justice under § 1412 are:

the location of the plaintiff and defendant; . . . the ease of access to necessary proof; . . . the availability of subpoena power for the unwilling witness; . . . the expense related to obtaining willing witnesses; . . .the enforceability of any judgment rendered; . . . the ability to receive a fair trial; . . . the state's interest in having local controversies decided within its borders, by those familiar with its law; and, . . . the economics of the estate administration.

*In re A.R.E. Mfg. Co., Inc.*, 124 B.R. 912, 914 (Bankr. M.D. Fla. 1991).

35.     Further, courts have recognized a "presumption that venue is most proper in the court in which debtor's bankruptcy case is pending. . . ." *Unico*, 264 B.R. at 783; *see also Orthodontic Centers of Texas, Inc. v. Corwin*, CIV.A.H-06-2595, 2007 WL 173220 at *1 (S.D. Tex. Jan. 18, 2007) ("There is a strong presumption that proceedings 'related to' a bankruptcy should be litigated in the judicial district where the bankruptcy itself is pending.").

36.     Taken together, justice and convenience overwhelmingly favor transfer to the Southern District of Texas.

### i. Economics of Estate Administration

37.     The critical factor in deciding to transfer under Section 1412 is the "economics of the estate administration."  Numerous courts have recognized this as "the most important factor" in the transfer decision-making process.  *Creekridge Capital, LLC v. Louisiana Hosp. Ctr., LLC*, 410 B.R. 623, 630 (D. Minn. 2009) (collecting cases); *Unico*, 264 B.R. at 783 ("[I]t is important for a court to determine which venue would promote the most efficient administration of the bankruptcy estate.").  This factor is met whenever "transfer would promote the economic and efficient administration of the bankruptcy estate." *Creekridge*, 410 B.R. at 630.

38.     Here, this factor weighs heavily in favor of transfer.  UOB and all of the Other Defendants are headquartered in Houston, and their witnesses will likely be based in Houston. Further, UOB has had to retain Florida counsel as part of the underlying actions, further stressing the bankruptcy estate.  Transfer is proper here, because it would aid in the efficient and cost-

effective resolution of the proceedings by allowing UOB to consolidate counsel, thereby minimizing the impact on the bankruptcy estate. *See Unico*, 264 B.R. at 784 (noting the fact that "parties would need to employ new counsel, forcing both parties to spend more time and money on this litigation" as a consideration hindering efficient resolution of proceedings); *see also Orthodontic Centers*, 2007 WL 173220, at *2 (S.D. Tex. Jan. 18, 2007) (transferring case to district where the bankruptcy was pending to facilitate consolidation with similar cases).

39.     Additionally, transfer reduces the risk of inconsistent judgment and unnecessary depletion of the bankruptcy estate.  Most of the Debtor's estate manifests in UOB and the Other Defendants' insurance coverage policies.  These insurance policies are the principal assets at issue in the Adversary Proceeding, the UOB Bankruptcy *and* the *Hines* proceeding.  Each of these proceedings bring up different points of law, which different courts might analyze differently.   Even minor differences in the resolution of the claims as they relate to coverage or indemnity could place significant strain on the bankruptcy estate.  Put simply, it neuters the protective function of bankruptcy to allow claims related to nearly the entire value the bankruptcy estate to be determined by differing courts.  The interests of justice and convenience require transfer for this reason alone.

### ii.  Presumption in Favor of the Court of Bankruptcy

40.     The presumption in favor of the "court in which debtor's bankruptcy case is pending" also weighs strongly in favor of transfer.  *Unico*, 264 B.R. at 783.  Here, UOB's bankruptcy is pending before the Texas Bankruptcy Court.  The "strong" presumption, *see Orthodontic Centers*, 2007 WL 173220, at *2, dictates that the Adversary Proceeding and any "proceedings 'related to' a bankruptcy should be litigated in the judicial district where the bankruptcy itself is pending"—here, the Texas Bankruptcy Court.  While "under certain circumstances a transfer to that venue may be inappropriate," *see, e.g.*, *Unico*, 264 B.R. 779 at

783 (declining to transfer a litigation to Delaware which had "been pending for almost four years" in the state of Florida and would be decided under Florida law, because the presumption was overcome by efficiency and fairness concerns), these circumstances do not present themselves here.  Rather, transferring the Adversary Proceeding—including the claims against the Other Defendants—would best serve the needs of efficiency and justice, and comport with the presumption in favor of the venue of bankruptcy.

### iii.   Location of Parties, Access to Proof, and Witnesses

41.     The next factors—"the location of the plaintiff and defendant[s]," "the ease of access to necessary proof" and the factors related to witnesses—all favor transfer.  Transferring the Adversary Proceeding to be decided with the UOB Bankruptcy would save money and promote efficiency by consolidating the related claims.  Because the Other Defendants and UOB are all physically located in Houston together with their employees and officers, "ease of access to necessary proof," such as the Defendants' witnesses or documents, would be improved by transfer.  The "expense[s]" related to the production of the necessary witnesses for this case— employees of UOB or its co-defendants—would be lower in Houston; while the "ability to subpoena unwilling witnesses" from Houston would be greater.  Indeed, as the bankruptcy court for the Middle District has recognized, § 1412's witness related "factor[s] concern[] the proximity of those witnesses necessary for administration of [the bankruptcy] estate." *Campbell*, 242 B.R. at 747.  Since the "necessary" witnesses related to the administration of UOB's estate are located in Houston, this factor weighs in favor of transfer.

42.     Finally, as to the "location of the plaintiff and defendant[s]," UOB and the Other Defendants are physically located and primarily operate out of the city of Houston.  Similarly, the Plaintiffs have substantial connections to the city of Houston.  In particular, Southstar Capital Group I, the lead named plaintiff in the Adversary Proceeding, owns and operates apartment

complexes throughout the greater Houston area. In fact, of the five apartment complexes listed on its website, four are from Houston, Katy, Pearland or the Woodlands, within the Greater Houston Area; only one listed complex is in Florida.

43.     Although Southstar is a Florida limited liability company, it has significant connections to the state of Texas and the city of Houston. Even without this fact, however, the needs of the debtor and the many co-defendants arguably outweigh the concerns of the Plaintiffs. This is especially true as it relates to expenses which will impact the availability of resources for other creditors. This factor likewise favors transfer.

### iv.  Enforceability of Judgment and Fair Trial

44.     The next factors, "the enforceability of any judgment rendered" and "the ability to receive a fair trial" are both neutral here. There is no reason to believe Plaintiffs could not receive a fair trial in the Southern District of Texas. Similarly, there is no reason to believe that a judgment from the Southern District of Texas would be any more difficult to enforce than a judgment from the Middle District of Florida. In fact, a judgment from the Southern District of Texas would be *easier* to enforce because UOB's assets are subject to the UOB Bankruptcy pending in the Texas Bankruptcy Court.

### v.  State Interests

45.     The final factor is a state's "interest in having local controversies decided within its borders." This factor asks a court to examine the competing interests of the states whose citizens may be impacted by the resolution of a dispute. *See In re Newport Creamery, Inc.*, 265 B.R. 614, 621 (Bankr. M.D. Fla. 2001) (examining the interests of Rhode Island, Connecticut, and Massachusetts when deciding to transfer a proceeding from the Middle District of Florida to a bankruptcy court in Rhode Island). Although it is a closer call than other factors, this also favors transfer to the Texas Bankruptcy Court.

46.     Both Texas and Florida have arguments in favor of having the Adversary Proceeding decided within their borders.  The tort claims from the Adversary Proceeding emerge from a Florida building project, involve Florida law, and one of the Plaintiffs is organized under Florida law, all of which disfavor transfer.   On the other hand, Texas controls the UOB Bankruptcy, creditors will be prejudiced by having to travel to Florida for a bankruptcy in Texas, Plaintiffs, UOB, and the Other Defendants have clear and consistent ties to Houston, Texas, and the risk of inconsistent or contradictory judgments as to the bankruptcy estate all favor transfer. This is further supported by the fact that UOB has filed a complaint against Ironshore with the Texas Department of Insurance, attached hereto as Exhibit B.

47.     Although both states have valid interests in the resolution of the dispute, Texas's interests in having the Adversary Proceeding and its related suits decided within its borders should carry the day on this issue—especially in light of their expected impact on the UOB Bankruptcy.  Instructive in this regard is *Newport*, a decision whereby the bankruptcy court for the Middle District transferred a proceeding from the Middle District of Florida to a bankruptcy court in Rhode Island.  When analyzing this factor, this Court considered the contentions from various states which were "very concerned about the impact th[e] case will have on the [debtor's] 3,000 employees, their families, and the communities in which they reside." *Id.*  The bankruptcy court for the Middle District has recognized this "very legitimate interest" and "that venue in Florida will impose an undue burden and expense upon these . . . *creditors*, 'some of whom will be forced to forego pursuit of their rights if they are forced to do so in Florida.'" *Id.* (emphasis added).

48.     Similarly, here, resolving the claims inextricably linked to the UOB Bankruptcy outside of the Texas Bankruptcy Court would impose burden and expense on the parties,

creditors, and potential creditors.  While it is true that Florida has an interest in the resolution of alleged torts impacting its citizens, the Plaintiffs operate and have deep connections in Houston as well.  *See, supra*, Section iii.   And although some unfairness may be imposed on those creditors outside of Texas, they would not be able to escape going through the UOB Bankruptcy in Texas to successfully stake their claims.  In short, it is both efficient—and in the interest of justice—for the Adversary Proceeding to be decided by the Texas Bankruptcy Court.

49.     For these reasons, the Section 1412 factors strongly support transfer to the Southern District of Texas.

## **Transfer is Warranted Under 28 U.S.C. § 1404(a)**

50.     Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Courts analyzing these concerns have considered factors which overlap almost entirely with the § 1412 factors discussed above.  *See, e.g., McLeroy*, 2006 WL 1234907, at *1 (noting that "28 U.S.C. § 1404(a) sets out three main factors in determining a change of venue request: convenience of parties, convenience of witnesses, and the interest of justice.").   The analysis of these factors does not meaningfully differ from analysis under § 1412.  *Id.* (finding that transfer to the Panama City bankruptcy court was appropriate after considering factors such as the availability of witnesses, distances that witnesses would have to travel and relative needs and burdens on parties).

51.     Since "the same analysis" generally applies under § 1404(a) as under § 1412, the court should also grant transfer under § 1404(a), for the reasons stated above in connection with the § 1412 factors.  *Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R.

90, 98 n.3  (Bankr. S.D. Tex. 2009) ("[c]onsidering the nearly identical language in § 1404(a) and § 1412, courts have generally applied the same analysis to both").

## V.  CONCLUSION

52.    For the foregoing reasons, UOB respectfully requests that this Court transfer this Adversary Proceeding to the United States Bankruptcy Court for the Southern District of Texas, where the UOB Bankruptcy is pending and for such further and additional relief as this Court may deem just and proper.

Respectfully submitted,

*/s/Jason A. Perkins*
Jason A. Perkins, Esq.
Florida Bar Number 0610852
Carlton Fields, P.A.
450 S. Orange Avenue
Orlando, Florida 32801-3370
Telephone:    407.244.8250
Facsimile:     407.648.9099
E-Mail: jperkins@carltonfields.com

*Attorneys for Defendant Urban Oaks Builders LLC*

OF COUNSEL:

BAKER BOTTS, L.L.P.
Joseph A. Colagiovanni
Texas Bar No. 24104457 (*Pro Hac Vice Pending*)
Katherine A. Brooker
Texas Bar No. 24075772 (*Pro Hac Vice Pending*)
One Shell Plaza
910 Louisiana
Houston, Texas 77002
Telephone:  713.229.1222
Facsimile:  713.229.7922
joseph.colagiovanni@bakerbotts.com
katherine.brooker@bakerbotts.com

Omar J. Alaniz
Texas Bar No. 24040402 (*Pro Hac Vice Pending*)

2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: 214.953.6593
Facsimile: 214.661.4593
omar.alaniz@bakerbotts.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 10, 2018, a true and correct copy of the foregoing document was filed electronically with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, and to all counsel of record at the addresses and email addresses listed below:

Michael A. Hornreich
Steven D. Gonzales
Weinberg Wheeler Hudgins, Guin & Dial, LLC
255 South Orange Avenue, Suite 1260
Orlando, FL 32801
mhornreich@wwhgd.com
sgonzales@wwhgd.com

Ramon A. Rasco
Podhurst Orseck, P.A.
1 SE 3rd Avenue, Suite 2700
Miami, FL 33131
rrasco@podhurst.com

*Counsel for Plaintiffs Southstar Capital*
*Group I, LLC, Cottington Road TIC, LLC,*
*and Durban Road TIC, LLC*

Joseph L. Rebak
Bryan T, West
Akerman LLP
Three Brickell City Centre, Suite 1100
98 Southeast Seventh Street
Miami, FL 33131
joseph.rebak@akerman.com
bryan.west@akerman.com
nancy.perez@akerman.com
anna.martinez@akerman.com

*Counsel for Defendants 1662 Multifamily,*
*LLC, Hines Interests Limited Partnership,*
*Hines 1662 Multifamily, LLC, Hines*
*Investment Management Holdings Limited*
*Partnership, HIMH GP, LLC, Hines Real*
*Estate Holdings Limited Partnership,*
*and JCH Investments, Inc.*

*/s/Jason A. Perkins*
Jason A. Perkins, Esq.