**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:                                              CHAPTER 11 CASE

URBAN OAKS BUILDERS LLC,                            CASE NO. 18-34892 (S.D. Tex.)
Debtor.

_____

SOUTHSTAR CAPITAL GROUP, I,
LLC, a Florida limited liability company;
COTTINGTON ROAD TIC, LLC, a Delaware
limited liability company; and DURBAN ROAD
TIC, LLC, a Delaware limited liability company,      CASE NO. 6:18-CV-1453-ORL31-GIK

        Plaintiffs,

v.

1662 MULTIFAMILY LLC, a Delaware limited
liability company; HINES 1662 MULTIFAMILY, LLC,
a Delaware limited liability company; HINES
INVESTMENT MANAGEMENT HOLDINGS LIMITED
PARTNERSHIP, a Texas limited partnership;
HIMH GP, LLC, a Delaware limited liability company;
HINES REAL ESTATE HOLDINGS LIMITED
PARTNERSHIP, a Texas limited partnership; HINES
INTEREST LIMITED PARTNERSHIP, a Texas
Limited Partnership; JCH INVESTMENTS, INC.,
a Texas corporation; and URBAN OAKS BUILDERS, LLC,
a Delaware limited liability company,

        Defendants.

_____/

## DISPOSITIVE MOTION TO ABSTAIN AND REMAND

        Southstar Capital Group, I, LLC, a Florida limited liability company, Cottington Road

TIC, LLC, a Delaware limited liability company, and Durban Road TIC, LLC, a Delaware

limited liability company (collectively, "**Plaintiffs**"), Plaintiffs in the underlying action styled

*Southstar Capital Group I, LLC, et al. v. 1662 Multifamily, LLC et al.*, Case No. 2018-CA-

415OC (the "**State Court Action**"), pending as of the commencement of Urban Oaks Builders

LLC's bankruptcy case in the Circuit Court of the Ninth Judicial Circuit in and for Osceola

County, Florida (the "**State Court**"), move this Court to abstain from exercising subject matter

jurisdiction and remand this action to State Court, and respectfully show the Court as follows:

## I.     SUMMARY OF ARGUMENT

Urban Oaks Builders LLC ("**UOB**")[1] removed the State Court Action to this Court based

on a bad-faith bankruptcy filing, the sole purpose of which was to manufacture federal court

jurisdiction.   Notwithstanding UOB's forum shopping scheme, the Court must abstain from

exercising subject matter jurisdiction pursuant to 28 U.S.C. § 1334(c)(2).

All of the factors warranting mandatory abstention are present here: Plaintiffs filed the

State Court Action prior to the commencement of UOB's bankruptcy case; the State Court

Action is "non-core" and contains state-law causes of action exclusively; there is no basis for

jurisdiction in federal court other than 28 U.S.C. § 1334; and the State Court Action may be

timely adjudicated in State Court.

Alternatively, the Court should abstain from exercising subject matter jurisdiction in the

interest of justice or in the interest of comity with the State Court or respect for Florida law

pursuant to 28 U.S.C. § 1334(c)(1) and equitably remand the State Court Action under 28 U.S.C.

§ 1452(b).

In the State Court Action, Plaintiffs allege that the defendants, each of which are affiliates

---

[1]UOB "is a general contracting and construction management company, with a focus on large multifamily
residential projects primarily for entities affiliated with Hines Interests Limited Partnership. . . ." *Declaration of
Todd Hagood in Support of Chapter 11 Petition and First Day Pleadings ¶ 5*, filed in UOB's chapter 11 case, Case
No. 18-34892, United States Bankruptcy Court for the Southern District of Texas, Houston Division [Bankruptcy
Case D.E. #2] (the "**Hagood Decl.**"), a true and correct copy of which is attached hereto as **Ex. A**.

of Hines Interests LP (collectively, the "**Hines Entities**"),[2] intentionally withheld, actively concealed, misrepresented and/or fraudulently failed to disclose physical characteristics and existing conditions of the 306-unit multifamily project that they sold to Plaintiffs located at 1662 Celebration Blvd., Celebration, Florida 34747 (the "**Property**").  Debtor UOB served as the licensed general contractor for work on the Property pursuant to Florida Statute Section 489.119. Defendant 1662 Multifamily LLC ("**1662 Multifamily**"), a non-debtor affiliate, sold the Property to Plaintiffs.  Plaintiffs assert that the remaining Hines Entities dominated and controlled UOB and 1662 Multifamily, such that the Hines Entities are alter egos of each other.

Plaintiffs brought the following state-law causes of action against the Hines Entities in the State Court Action: (i) fraudulent non-disclosure/fraudulent inducement (Count I); (ii) breach of contract and/or the covenant of good faith and fair dealing arising thereunder – intentionally withholding of material information (Count II); statutory violation of Section 553.84, Florida Statutes (2001) (Violation of Florida Building Code Statute) (Count III); negligence (Count IV); rescission (Count V); and breach of warranty agreement (Count VI).  Plaintiffs demanded a jury trial.

The State Court Action belongs in the State Court.  This Court should abstain and remand the State Court Action to State Court based on either mandatory abstention under 28 U.S.C. § 1334(c)(2) or permissive abstention under 28 U.S.C. 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b).

---

[2]As this Court recounted in its Order to Show Cause in the Coverage Action (defined below) [D.E. #53], the Hines Entities are related entities with overlapping or common ownership and management involving Jeffrey C. Hines and Gerald D. Hines.  According to its website, Hines possesses over $66 billion in assets under management in the United States.  *See* https://www.hines.com/locations/usa.

## II.  SUMMARY OF THE STATE COURT ACTION

### A.  Background Facts

The disputes in the State Court Action arise from Plaintiffs purchase of the Property on or about July 1, 2016 for $67,000,000.00.  Plaintiff Southstar Capital Group I, LLC ("**Southstar**"), as manager and agent for Plaintiffs Cottington Road TIC, LLC ("**Cottington**") and Durban Road TIC, LLC ("**Durban Road**"), entered into that certain Agreement of Sale and Purchase between Southstar and 1662 Multifamily (the "**Agreement**").  Cottington and Durban Road are "permitted assigns" of Southstar, as that phrase is used in the Agreement.

1662 Multifamily owed a duty under controlling Florida common law and the Agreement to refrain from intentionally withholding or otherwise failing to disclose to Plaintiffs any physical characteristic of or existing condition on the Property then known to 1662 Multifamily materially affecting the value of the Property that was not readily observable or otherwise known to the Plaintiffs, including, but not limited to, structural conditions of the buildings on the Property.

1662 Multifamily's common law duty to disclose was recognized by the parties in those portions of the Agreement that deal with waiver of potential claims related to conditions of the Property.  Specifically, Section 5.6(b) of the Agreement states as follows:

> (b)  <u>Purchaser's Waiver of Objections</u>.  Purchaser acknowledges that it has inspected the Property, observed its physical characteristics and existing conditions and had the opportunity to conduct such investigations and studies on and of said Property and adjacent areas as it deems necessary, and subject only to Seller's responsibility for any breach of the warranty and representation contained in Section 8.1(i) of this Agreement (as limited by Section 16.1 of this Agreement), Purchaser hereby waives any and all objections to or complaints (including but not limited to actions based on federal, state or common law and any private right of action under CERCLA, RCRA or any other state and federal law to which the Property is or may be subject) against Seller, its Affiliates, or their respective officers, directors, partners, members, owners, employees or agents regarding physical characteristics and existing conditions, including without limitation

4

structural and geologic conditions, subsurface soil and water conditions and solid and hazardous waste and Hazardous Substances on, under, adjacent to or otherwise affecting the Property or related to prior uses of the Property. **The Purchaser's waiver as set forth in this Section 5.6(b) shall not apply in the event that Seller either intentionally withheld or fraudulently failed to disclose to Purchaser any physical characteristic of or existing condition on the Property as described above that was then known to Seller.**[3]

(Emphasis added.) Thus, in accordance with Plaintiffs' common law and contractual rights, no waiver of claims would occur in those situations where 1662 Multifamily or its affiliates, the other Hines Entities, intentionally withheld or fraudulently failed to disclose to Plaintiffs physical characteristics or existing conditions on the Property that were not readily observable or otherwise known to the Plaintiffs.

Subsequent to the purchase of the Property, Plaintiffs discovered that the Hines Entities intentionally withheld, concealed and failed to disclose extensive non-compliance with the as-built drawings, and extensive violations of the Florida Building Code, as well as other latent defect conditions, which could not be observed or determined by Plaintiffs through the exercise of ordinary reasonable diligence (collectively, the "**Hidden Defects**").[4] The nature and extent of the Hidden Defects were discovered only after components in each of the six buildings began to fail as a direct result of several of the Hidden Defects. After the entire Property was evacuated, it was necessary to carefully and methodically rip and tear apart substantial portions of the buildings to investigate the full extent and nature of the Hidden Defects. The Hidden Defects resulted in the Osceola County Building Department issuing an Order dated August 14, 2017,

---

[3] Section 1.1 of the Agreement (Definitions) defines "To Seller's Knowledge" to be the "present actual (as opposed to constructive or imputed) knowledge of Jon Wood." Jon Wood was an employee of Hines Interests LP and was intimately involved in the development and construction of the Property and, Plaintiffs contend, had knowledge of the non-compliant and deficient construction implemented by UOB and in particular the defective and non-conforming physical characteristics and existing condition of the Property.

[4] The Hidden Defects include without limitation defective construction of the structural elements; Building Code Violations; defective construction of the shear walls; failed tension rods; improper construction of structural members; improper installation of structural Zip Board sheathing as part of the building envelope; failed cantilevered balconies, balcony railings and roof elements; and improper water proofing and flashing at balconies.

condemning the Property.  Consequently, the Osceola County Building Department posted a Notice of Evacuation on all six buildings on the same date.

Plaintiffs have estimated the cost of the repairs required due to the defective work and the resulting damages (including lost rent) at more than $45,000,000.00, which damages continue to escalate, including at over $451,000.00 each month for the lost rent claim alone.

**B.    Procedural History**

On February 15, 2018, Plaintiffs commenced the State Court Action.  On May 18, 2018, Defendant UOB filed an answer and affirmative defenses and also a motion to dismiss the complaint.  On May 18, 2018, the remaining Hines Entities filed a motion to dismiss the complaint.  On August 31, 2018, Plaintiffs filed a motion for leave to file an amended complaint. These motions were pending before the State Court at the time UOB removed the State Court Action to this Court.

Additionally, Plaintiffs propounded discovery on the Hines Entities prior to the removal of the State Court Action.  On June 8, 2018, UOB filed a motion for extension of time to respond to written discovery.  On June 22, 2018, the remaining Hines Entities filed a motion to stay discovery pending a ruling on their motion to dismiss.  On June 25, 2018, the State Court granted UOB's motion for an extension of time to respond to discovery.  On June 26, 2018, 1662 Multifamily responded to Plaintiffs' first request for production and first set of interrogatories. On July 23, 2018, UOB filed its second motion for extension of time to respond to discovery. A hearing on UOB's second motion for extension of time to respond to discovery was scheduled for September 6, 2018.

On September 4, 2018, UOB filed its suggestion of bankruptcy in the State Court Action, declaring that the entire State Court Action is stayed.

C.      **The Coverage Action**

On June 7, 2018, the Hines Entities commenced an action in the State Court styled *Hines Interests Limited Partnership, et al. v. Southstar Capital Group I, LLC, et al.*, Case No. 2018 CA 001845 OC (the "**Coverage Action**"), seeking declaratory relief that its insurers are obligated to defend the Hines Entities in the State Court Action and cover any liability attributable to the Hines Entities.  On July 17, 2018, Gemini Insurance Company filed a notice of removal of the Coverage Action to this Court.[5]  Certain parties have answered the Hines Entities' complaint, and defendant Gemini Insurance Company has filed a motion to dismiss the complaint.  On September 4, 2018, Urban Oaks filed a motion to transfer venue of the Coverage Action to the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

D.      **The Bankruptcy Action**

On August 31, 2018, UOB filed a voluntary Chapter 11 petition in the Bankruptcy Court, Case No. 18-34892.  UOB commenced its Chapter 11 case with the stated goal of transferring the State Court Action and the Coverage Action to the Bankruptcy Court:

> The Debtor filed this Chapter 11 Case in order to provide it a method of controlling the costs associated with defending the Southstar lawsuit and prosecuting its insurance claims in the Coverage Litigation.  The Debtor intends to immediately remove the Southstar lawsuit and seek to transfer both that litigation and the Coverage Litigation to the Bankruptcy Court.  The Debtor believes that through the filing of the Chapter 11 Case, it can more cost-effectively defend itself from the underlying claims brought by Southstar and ultimately obtain the full protection of the insurance coverage to which it is entitled.[6]

UOB appears to be a pass-through entity for the Hines Entities with little to no assets or

---

[5]The case number of the Coverage Action is 6:18-cv-01147-ACC-DCI.  On September 12, 2018, the Court entered an Order to Show Cause as to why the Coverage Action should not be remanded to State Court for lack of subject matter jurisdiction [Coverage Action D.E. #53].

[6]Hagood Decl. at ¶ 42. Mr. Hagood's declaration was admitted into evidence in support of UOB's "first-day motions" at a hearing before the Bankruptcy Court on September 6, 2018.

liabilities.   UOB has no secured debt other than amounts owed to its managing member, POC

Holdings 2, Inc., an affiliate of Hines Entities.[7]   According to UOB "almost the entire value of

the bankruptcy estate consists of the insurance policies at issue in [the Coverage Action]."[8] UOB

states that its business operations are profitable.[9]

As a pass-through entity, UOB appears to be highly dependent on its members and Hines

Interests Limited Partnership for its business operations.   UOB's managing member funded

UOB's costs relating to Plaintiff's construction-defect claims in the amount of $3,630,645.86

pre-petition.[10] The managing member agreed to advance up to UOB an additional

$2,000,000.00,[11] "but was unwilling to continue to do so without the protection provided to it

and the Debtor from a chapter 11 filing and approved debtor in possession financing."[12]

Additionally, UOB utilizes Hines Interests Limited Partnership "for certain administrative

services such as information technology, human resources, cash management, risk management

and accounting."[13]   The Bankruptcy Court has allowed UOB to continue to develop its three

ongoing projects and pay its subcontractors and vendors.[14]   UOB did not file a bankruptcy

petition to obtain a breathing spell from litigation.   Rather, as UOB is profitable and possesses

substantial funds to litigate, UOB unabashedly seeks to "use [the bankruptcy] forum as venue

from which to seek to liquidate Southstar's claims and obtain the full benefit of its insurance

---

[7]*Id.* at ¶ 19.

[8]*See Motion to Transfer Venue* filed in the Coverage Action at ¶ 33[Coverage Action D.E. #47].

[9]Hagood Decl. at ¶ 17.

[10]*Id.* at ¶ 18.  UOB's sole managing member is POC Holdings 2, Inc.  UOB's other member is POC Holdings 1, Inc. UOB's "members are special purpose entities in which Gerald D. Hines and Jeffrey C. Hines are the sole indirect shareholders, respectively." *Id.* at ¶ 16.

[11]*See id.* at ¶ 18.

[12] *See id.* at ¶ 43.

[13]*Id.* at ¶ 16.

[14]*See* Order Regarding Funds Held in Trust for the benefit of Subcontractors and other Vendors [Bankruptcy Case D.E. #27], a true and correct copy of which is attached hereto as **Ex. B**.

coverage."[15]

## III.    ARGUMENT AND AUTHORITIES

The Court should abstain and remand the State Court Action to the State Court based on either mandatory abstention under 28 U.S.C. § 1334(c)(2) or permissive abstention/equitable remand under 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b).   Where, as here, a case "involve[s] state-law claims for which the sole basis of bankruptcy jurisdiction is 'related to' jurisdiction," the Court must abstain under 28 U.S.C. § 1334(c)(2).[16]   Even if the Court finds that mandatory abstention is inapplicable, Sections 1334(c) and 1452(b) "evidence a clear intent to provide district courts with discretion to abstain or remand when presented with an action loosely 'related' to a bankruptcy proceeding."[17]   All of the factors supporting mandatory abstention or permissive abstention/equitable remand are present here.

### A.    Section 1334(c)(2) Requires Mandatory Abstention

UOB removed the State Court Action to this Court pursuant to 28 U.S.C. § 1452(a), which generally provides that a party may remove a state-court claim or cause of action to federal court under 28 U.S.C. § 1334.   Section 1334(b) provides, in part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under chapter 11."[18]

However, the "broad grant of jurisdiction conferred by § 1334(b) is subject to a mandatory abstention provision applicable to certain state-law claims."[19]   The Eleventh Circuit

---

[15]Hagood Decl. at ¶ 45.

[16]*Celotex v. Edwards*, 115 S.Ct 1493, 131 L.Ed.2d 403 n.10 (1995).

[17]*M&I Marshall & Isley Bank v. Kaplan*, No. 8:11-cv-352-T-23TGW, 2011 WL 1326911, at *2 (M.D. Fla. Apr. 6, 2011).

[18]28 U.S.C. § 1334(b) (2018).

[19]*Marshall v. Marshall*, 126 S.Ct 1735, 164 L.Ed.2d 480 n. 3 (2006).  *See also Lennar Corporation v. Briarwood Capital LLC*, 430 B.R. 253, 262 (Bankr. S.D. Fla. 2010) (court receiving action removed from state court "performs

has affirmed that the mandatory abstention statute is applicable to cases removed to federal court under 28 U.S.C. § 1452.[20]  The mandatory abstention statute is set forth in Section 1334, which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.[21]

Thus, upon a timely motion, "courts must abstain from hearing a state law claim if the following requirements are met: "(1) The claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding.  That is, it is related to a case under title 11 but does not arise under or arise in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court."[22]

This Motion is timely filed as Plaintiffs have filed the Motion "as soon as possible after . . . learn[ing] the grounds for such motion."[23]  Further, Plaintiffs have filed this Motion prior to substantively litigating any of the causes of action asserted in the State Court Action.[24]  Thus, there is no issue regarding the timeliness of the Motion.

---

a jurisdictional gatekeeping function, which includes consideration of remand motions before considering transfer of the proceeding to the home bankruptcy court.").

[20]*See Christo v. Padgett*, 223 F.3d 1324, 1331 (11th Cir. 2000).

[21]28 U.S.C. § 1334(c)(2) (2018).

[22]*In re United Container LLC*, 284 B.R. 171, 171 (Bankr. S.D. Fla. 2002) (citing 28 U.S.C. § 1334(c)(2); *In re Rupp & Bowman Co.*, 109 F.3d 237, 239 (5th Cir. 1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1206 (5th Cir. 1996); *Seale v. Owens*, 134 B.R. 181, 185 (E.D. La. 1991); *Baxter Healthcare Corp. v. Hemex Liquidation Trust*, 132 B.R. 863, 866 (N.D. Ill. 1991)).

[23]Thomas J. Salerno, et al., Commercial Bankruptcy Litigation § 3:36 (Jan. 2018 Update) (*quoting In re Novak*, 116 B.R. 626, 628 (N.D. Ill. 1990)).

[24]*Id.* (*citing In re AHT Corp.*, 265 B.R. 379, 384 (Bankr. S.D.N.Y. 2001)).

### 1.      There is No Independent Basis for Jurisdiction

UOB asserts that the Court has jurisdiction over the State Court Action based solely upon its bankruptcy case.  As there is no independent basis for federal court jurisdiction, the first factor favoring mandatory abstention is satisfied.[25]  There is no question that Plaintiffs "selection of the forum in the State Court was in a proper venue and all claims are based on pure state law and have nothing to do with any provision of the [Bankruptcy] Code."[26]  The Court should find that there is no independent basis for jurisdiction over the State Court Action other than 28 U.S.C. § 1334, which favors mandatory abstention.

### 2.      The State Court Action is a Non-Core Matter "Related to" UOB's Bankruptcy Case.

UOB asserts that the Court has subject matter jurisdiction over the State Court Action as (a) the State Court Action contains claims against UOB and, therefore, the State Court Action "concerns the administration of the bankruptcy estate" and (b) the State Court Action is "related to" UOB's bankruptcy case, pursuant to 28 U.S.C. § 1334(b).[27]  The State Court Action is, at most, related to UOB's bankruptcy case.

The distinction between a "core" and "non-core" proceeding is critical to determining the scope of a bankruptcy court's subject matter jurisdiction over each cause of action and whether mandatory abstention applies to each cause of action. Core proceedings "are those that 'involve . . . a right created by the federal bankruptcy law' or that 'would arise only in bankruptcy,' such as 'the filing of a proof of claim or an objection to the discharge of a particular

---

[25]*See Perry v. Florida Trucking Co. No. 8:09–CV–2328–T–27EAJ.,* 2010 WL 299255, at *1(M.D. Fla. Jan. 21, 2010) (mandatory abstention appropriate where the "only possible basis for federal court jurisdiction is the non-exclusive jurisdiction established by 28 U.S.C. § 1334(b)").

[26]*In re McDill Columbus Corp.*, 265 B.R. 264, 268 (Bankr. M.D. Fla. 2001).

[27]Notice of Removal [D.E. # 1] at ¶¶ 20, 22.

debt.'"[28]  A non-exhaustive list of core proceedings is found in 28 U.S.C. § 157(b)(2).  One such example of a core proceeding is "matters concerning the administration of the estate. . ."[29]  This statute, however, has been consistently construed as *not* "conferring core status on a debtor's lawsuit based upon a state law cause of action that otherwise is not involved in the bankruptcy case."[30]

Non-core proceedings are, at most, "related to" the bankruptcy case.  "The test for determining whether a civil proceeding is 'related-to' bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[31]  Unlike core proceeds, bankruptcy courts "may not enter final orders in. . . related non-core cases unless all parties consent."[32]  Further, absent the parties' consent, "the bankruptcy court must prepare proposed findings of fact and/or conclusions of law for the district court to review *de novo*."[33]  A bankruptcy court cannot conduct a jury trial without the parties' consent.[34]

The State Court Action is plainly a non-core proceeding as it solely involves "garden variety state-law claims." [35]  The State Court Action does not "invoke substantive rights created by federal bankruptcy law or that exist exclusively in the bankruptcy context."[36]  It cannot be

---

[28]*Wortley v. Bakst*, 844 F.3d 1313, 1319 (11th Cir. 2017) (quoting *In re Toledo*, 170 F.3d 1340, 1348 (11th Cir. 1999)).

[29]28 U.S.C § 157(b)(2)(A) (2018).

[30]William L. Norton, Jr., 1 *Norton Bankr. L. & Prac.* 3d § 4:72 (July 2018 Update) (citing numerous cases).

[31]*In re Nassau Dev. Of Village W. Corp.*, 547 B.R. 857, 860 (Bankr. S.D. Fla. 2016) (citing *Homestead v. Boone*, 52 F.3d 958, 960 (11th Cir. 1995)).

[32]*Wortley*, 844 F.3d at 1318.  On September 19, 2018, Plaintiffs filed notice that they do not consent to the Bankruptcy Court entering final orders or judgment [D.E. #24].  Further, Plaintiffs do not consent to the Bankruptcy Court conducting a jury trial.

[33]*Id.*

[34]*See* 28 U.S.C. § 157(e) (2018).

[35]*In re Artecity Mngmt., LLC*, Adversary No. 10-03595-BKC-AJC, 2010 WL 4340110, at *2 (Bankr. S.D. Fla. Oct. 25, 2010) (construction litigation deemed non-core).

[36]*Wortley*, 844 F.3d at 1318.

gainsaid that the mere assertion of claims against an entity that subsequently files a bankruptcy case does not "[change] the character of a prepetition lawsuit against the debtor."[37]   Further, UOB is but one of several other defendants, none of whom are debtors.   The Court's subject matter jurisdiction over these non-debtors is tenuous.[38]   For these reasons the Court should find that the State Court Action is a non-core proceeding and, at most, related to UOB's bankruptcy case, as each cause of action existed "prior to and independent of the bankruptcy proceedings."[39] Thus, the second factor favoring mandatory abstention is satisfied.

### 3.    The State Court Action Can Be Adjudicated Timely in State Court

This third factor of mandatory abstention "does not require convincing proof that the case will be tried sooner in the state court than in federal court."[40]   Rather, courts consider the following factors: (1) backlog of the state court and federal court calendar; (2) status of the proceeding in state court at time of removal; (3) status of the bankruptcy case; (4) complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; (6) whether a jury demand has been made; and (7) whether the bankruptcy case is a reorganization or liquidation.[41]

---

[37] *Lennar Corporation*, 430 B.R. at 264 (citing *In re Toledo*, 170 F.3d 1340 (11th Cir. 1990)); *In re Wood,* 825 F.2d 90 (5th Cir. 1987).   *See also Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1348-49 (11th Cir. 1999) (mandatory abstention appropriate in state contract action).

[38] *See Trident Shipworks, Inc.*, 262 B.R. 107, 110 (Bankr. M.D. Fla. 2001) (court found that it lacked related-to jurisdiction over state-law claims between non-debtors).

[39] *Perry v. Florida Trucking Co.*, No. 8:09-CV-2328-T-27EAJ, 2010 WL 299255, at *1 (citing *In re SOL, LLC,* 419 B.R. at 504; *In re Davis*, 899 F.2d 1136, 1140 (11th Cir. 1990) ("non-core" proceedings are "outside the scope of bankruptcy law as such."), *cert. denied*, 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990).   *See also In re Talisman Marina, Inc.*, 385 B.R. 329 (Bankr. M.D. Fla. 2008) ("The term 'core proceedings' in 28 U.S.C. § 157 was meant to include those proceedings that would not exist at law in the absence a Bankruptcy Court, i.e., the type of proceedings that spring from the operation and application of the Bankruptcy Code, and would not have an existence outside a bankruptcy case.") (citing *In re Davis,* 899 F.2d 1136, 1140-41 (11th Cir. 1990))).

[40] *Lennar Corp.,* 430 B.R. at 265 (citing *In re United Container LLC*, 284 B.R. at 174).

[41] *Id.*

#### i.      Backlog of the state court and federal court calendar

Each of the courts that could possibly adjudicate the State Court Action possesses significant caseloads.   According to the Federal Judicial Caseload Statistics, the Bankruptcy Court had a docket that was more active than approximately 75% of the bankruptcy courts nationwide for the twelve month period ending March 31, 2018.[42]   The United States District Court for the Southern District of Texas had a docket that was more active than approximately 95% of the district courts nationwide for the twelve month period ending March 31, 2018.[43] Given the significant caseloads of each court, there is no assurance that the federal courts could adjudicate the State Court Action more quickly than the State Court.   Indeed, given that the Bankruptcy Court will be unable to enter final orders or conduct a jury trial, both the Bankruptcy Court and the Southern District of Texas would be required to adjudicate the State Court Action should the Court ultimately transfer venue of this case to Texas.   There is no reason why the State Court could not adjudicate the State Court Action as quickly as the federal courts.

#### ii.     The status of the proceeding in state court at time of removal and the status of the bankruptcy case

Both the State Court Action and UOB's bankruptcy case are at early stages respectively. As a result, this factor appears neutral.

#### iii.    The complexity of the issues to be resolved

The State Court Action involves Florida statutory and common law claims, including claims against the Hines Entities for violating Florida's Building Code Statute, Section 553.84, Florida Statutes (2001).   The State Court is certainly well-suited to hear such claims.   From a standpoint of judicial economy, it makes more sense for the State Court to adjudicate Florida-

---

[42] *See* http://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2018.

[43]*Id.*   The United States District Court for the Middle District of Florida had a slightly more active docket than the United States District Court for the Southern District of Texas.

specific claims than a federal court in Texas.

> ### iv. Whether the parties consent to the bankruptcy court entering judgment in the non-core case; and whether a jury demand has been made

As stated Plaintiffs would not consent to the Bankruptcy Court entering a final judgment with respect to the claims raised in the State Court Action if this action was transferred to Texas. Further, Plaintiffs have demanded a jury trial and do not consent to the Bankruptcy Court conducting jury trial. As a result, the Bankruptcy Court could not enter final orders but rather submit to the District Court proposed findings of fact and conclusions of law, which the District Court reviews *de novo*, and the District Court must conduct the jury trial.[44] The bifurcation of the action between two courts would be less efficient than if the State Court adjudicates the State Court Action.

> ### v. Whether the bankruptcy case is a reorganization or liquidation.

UOB's bankruptcy filing is pure gamesmanship. There does not appear to be any need for a reorganization as UOB has disclosed that it has no non-insider secured debt and its primary asset is the insurance policies relevant to the Coverage Action. UOB has not sought a breathing spell from litigation but rather is aggressively moving to transfer the lawsuits to the Bankruptcy Court. There is no reason why the Court should exercise subject matter jurisdiction over the State Court Action based on the exceedingly remote prospect of reorganization.

> ## IV. Permissive Abstention and Equitable Remand is Appropriate

Even if the mandatory abstention statute did not require remand of this case, this Court should still decline to exercise jurisdiction and remand based on either permissive abstention under 28 U.S.C. § 1334(c)(1) or equitable remand under 28 U.S.C. § 1452(b). Section

---

[44] *See* 28 U.S.C. §§ 157(c)(1), 157(e) (2018).

1334(c)(1) states, in part, that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."[45]  Section 1452(b) states, in part, "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."[46]  "'The reasons for remanding a case under 28 U.S.C. § 1452(b), or abstaining from hearing a case under 28 U.S.C. § 1334(c)(1), are essentially identical, and the Court's analysis is basically the same for determining the applicability of either relief.'"[47]  The factors that courts consider in analyzing both statutes are as follows:

> (1) the effect, or lack of effect, on the efficient administration of the bankruptcy estate if discretionary abstention is exercised, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of related proceedings commenced in state court or other non-bankruptcy courts, (5) the jurisdictional basis, if any, other than § 1334, (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to jury trial, (12) the presence in the proceeding of non-debtor parties, (13) comity, and (14) the possibility of prejudice to other parties in the action.[48]

### 1.    The effect, or lack of effect, on the efficient administration of the bankruptcy estate if discretionary abstention is exercised

The adjudication of the State Court Action in State Court will not impact the efficient administration of UOB's bankruptcy estate.  Undoubtedly, UOB prefers that the Bankruptcy

---

[45]*See* 28 U.S.C. § 1334(c)(1) (2018).

[46]28 U.S.C. § 1452(b) (2018).

[47]*Clegg v. Bristol-Myers Squibb Co.*, 285 B.R. 23, 36 (M.D. Fla. 2002) (quoting *Luxford v. Dalkon Shield Claimant's Trust*, 1997 WL 1048338, *2 (D. Md. June 24, 1997)).

[48]*Lennar Corporation*, 430 B.R. at 265 (quoting *In re United Container, LLC*, 284 B.R. at 176)).

Court adjudicate the State Court Action; however, there is no good faith argument that UOB's bankruptcy case would be adversely affected should the State Court adjudicate the State Court Action rather than the Bankruptcy Court. The bankruptcy estate would be more efficiently administered if the State Court adjudicates the lawsuit rather than a bifurcated adjudication process between the Bankruptcy Court and the Southern District of Texas if the Court transfers the State Court Action to Texas. There would not be any detrimental impact on the administration of the bankruptcy estate if the Court remands the State Court Action to the State Court as opposed to retaining jurisdiction of the State Court Action. The first factor favors abstention and remand.

### 2.     The extent to which state law issues predominate over bankruptcy issues

The State Court Action is a non-core proceeding with no bankruptcy issues. State-law issues absolutely predominate. This second factor favors abstention and remand.

### 3.     The difficulty or unsettled nature of the applicable state law

The State Court action involves the interpretation of Florida's Building Code Statute as well as common-law causes of action for which the State Court is entirely qualified to adjudicate. "There are no unusual or difficult issues that would require this Court's expertise."[49] This factor favors abstention and remand.

### 4.     The presence of related proceedings commenced in state court or other non-bankruptcy courts

The State Court Action should be litigated in State Court regardless of where the Coverage Action is litigated. Insurance coverage issues have no bearing on the merits of the State Court Action. The Hines Entities commenced the Coverage Action in the State Court. The

---

[49] *In re De Mora*, Adv. No. 13-1719-BKC-AJC-A, 2013 WL 6085969, at *4 (Bankr. S.D. Fla. Nov. 19, 2013).

fact that they now wish to remove the Coverage Action to the Bankruptcy Court should not negate Plaintiffs' choice of forum. The Coverage Action is no bar to the Court abstaining and remanding.

### 5. The jurisdictional basis, if any, other than § 1334

There is no basis for federal jurisdiction other than 28 U.S.C. § 1334. As a result, this factor favors abstention and remand.

### 6. The degree of relatedness or remoteness of the proceedings to the main bankruptcy case

There does not appear to be any basis for UOB's bankruptcy case other than to transfer venue of the lawsuits to the Bankruptcy Court. The Bankruptcy Court's primary function would be to adjudicate the lawsuits or await a final judgment from the Southern District of Texas. There would be little else to administer in the main bankruptcy case. Indeed, if the Court abstains from exercising jurisdiction over the State Court Action and the Coverage Action, or remands the lawsuits, there would be little left for the Bankruptcy Court to do other than either stay the lawsuits against UOB or allow the lawsuits to proceed to judgment. This sixth factor favors abstention and remand.

### 7. The substance rather than the form of an asserted "core" proceeding

For the reasons mentioned above, the State Court Action is a non-core proceeding, which favors abstention and remand.

### 8. The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court

All of the claims are state-law claims.

### 9. The burden on the bankruptcy court's docket

"Retention of this case would burden not only the Bankruptcy Court's docket, but the

District Court's docket as well.  The matter will be tried in the District Court, but the Bankruptcy Court would handle all pre-trial matters."[50]  It is entirely uneconomical for both the Bankruptcy Court and the Southern District of Texas to adjudicate the State Court Action when the State Court may singularly adjudicate the action.  This factor favors abstention and remand.

### 10.    The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties

In its own words UOB filed its bankruptcy case to forum shop:

> The Debtor filed this Chapter 11 Case in order to provide it a method of controlling the costs associated with defending the Southstar lawsuit and prosecuting its insurance claims in the Coverage Litigation.  The Debtor intends to immediately remove the Southstar lawsuit and seek to transfer both that litigation and the Coverage Litigation to the Bankruptcy Court.[51]

Litigation costs do not justify UOB's bankruptcy case.  There is no material cost difference litigating to judgment the State Court Action in State Court or federal court.  If anything, the cost would be greater if the State Court Action was ultimately removed to the Bankruptcy Court because both the Bankruptcy Court and the Southern District of Texas would be required to adjudicate the action.  Further, UOB's managing member has advanced an additional $2 million to UOB to cover litigation costs so there does not appear to be any cost issue in defending the State Court Action.  What is particularly troublesome is that the managing member purportedly conditioned such advance on UOB commencing a bankruptcy case.[52]  This smacks of bad faith because the managing member obviously has a vested interest in UOB defending the lawsuit.  If the managing member does not wish to cover UOB's litigation costs then so be it, but the Court should not reward UOB's forum shopping charade to thwart

---

[50]*In re SOL, LLC*, 419 B.R. 498, 509 (Bankr. S.D. Fla. 2009).

[51]Hagood Decl. at ¶ 42.

[52]*Id.* at ¶ 43.

Plaintiffs' legitimate chosen forum.[53]   The Hines Entities had the financial wherewithal to develop, construct and sell a sizeable multifamily project in Osceola County for $67,000,000 to Plaintiffs.  In return the Plaintiffs obtained a Property plagued with life-safety issues ultimately resulting in the Property's evacuation.  The Hines Entities should be required to litigate their conduct in Osceola County, both for obvious convenience of the litigation process, as well as to prevent blatant forum shopping.

### 11.     The existence of a right to jury trial

Plaintiffs have a right to and have demanded a jury trial. As a result this factor favors abstention and remand.

### 12.     The presence in the proceeding of non-debtor parties

UOB is the only debtor in the State Court Action.  As the remaining defendants are non-debtors, this favors abstention and remand.

### 13.     Comity

Comity is warranted given the uniquely local, state-specific issues presented in the State Court Action.  For instance, the bankruptcy court in *In re SOL, LLC* remanded to state court an action involving a real estate dispute, finding that "where the real estate dispute involves solely state court issues, relates to property located within the state of Florida, and no core issues are involved, comity weighs heavily in favor of abstention."[54]   The reasoning in *In re SOL, LLC*

---

[53]*See In re SOL*, 419 B.R. at 509-510 (court found that "forum shopping may have been a consideration in the attempt to have that matter removed to this Court"); *In re De Mora*, 2013 WL 6085969, at *4 ("The removal of the proceeding to Bankruptcy Court, as opposed to properly responding in state court, suggests forum shopping by Defendant.  There is no rational basis for this case to be removed.").  *See also Wolinsky v. Oak Tree Imaging, LP*, 362 B.R. 770, 781 (S.D. Tex. 2007) (court remanded state-court action where there was "a strong flavor of forum shopping by the defendant, as the debtor did not file bankruptcy until immediately after the institution of this suit, and the maintenance of the debtor's bankruptcy filing is weakly related to any federal bankruptcy policy.  The role of bankruptcy courts is not to adjudicate two-party disputes and this dispute would never have reached this court absent the defendant's attempt to manufacture jurisdiction through the vehicle of a bankruptcy filing.") (citations omitted).  Plaintiffs are preparing a motion to dismiss UOB's bankruptcy case as a bad faith filing.

[54]*In re SOL*, 419 B.R. at 510.

equally applies here.

**14. The possibility of prejudice to other parties in the action**

There are no known other parties to the State Court Action.

For all of the foregoing reasons, the Court should abstain from exercising jurisdiction over the State Court Action and remand the State Court Action to the State Court.

## CONCLUSION

The State Court Action was removed to this Court based on a bad-faith bankruptcy filing. The Court need not look further than the Declaration of Todd Hagood to find that UOB is presumptively engaged in forum shopping. UOB has few assets and liabilities, other than its potential liability relating to the State Court Action, and its managing member has funded litigation costs and has committed to doing so going forward. In these circumstances, cost alone is an insufficient excuse to override Plaintiffs' chosen forum. In any event, cost appears to be merely a pretext as it will certainly cost more to litigate in Texas given the need for Plaintiffs to retain Texas counsel and because two courts will administer and hear the State Court Action rather than one state court in Osceola County. Plaintiffs have overwhelmingly satisfied the many factors required for mandatory abstention under 28 U.S.C. § 1334(c)(2), permissive abstention under 28 U.S.C. § 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b). Therefore, this Court should abstain from exercising jurisdiction over the State Court Action and remand the State Court Action to the State Court.

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order abstaining from the exercise of jurisdiction over the State Court Action and remand the State Court Action to the State Court, and for such other and further relief as the Court deems just and appropriate.

## LOCAL RULE 3.01 CERTIFICATION

Pursuant to Local Rule 3.01, undersigned counsel certifies that he attempted to confer with opposing counsel but opposing counsel has not responded to undersigned counsel's correspondence as of the filing of this Motion.  Undersigned counsel will update this certification upon receiving a response from opposing counsel.

Respectfully submitted,

/s/ Matthew I. Kramer_____
MICHAEL A. HORNREICH
Florida Bar No.: 379972
MATTHEW I. KRAMER
Florida Bar No.: 0937231
**WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC**
255 South Orange Avenue, Suite 1260
Orlando, Florida 32801
Phone:  407.734.7000
Fax:      407.930.9180
mhornreich@wwhgd.com
mkramer@wwhgd.com
*Counsel for Plaintiffs Southstar Capital
Group, I, LLC, Cottington Road TIC, LLC
and Durban Road TIC, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ Matthew I. Kramer